## KOONTZ *v.* NORTHERN BANK.

1. A purchaser under a deed from a receiver is not bound to examine all the proceedings in the case in which the receiver is appointed. It is sufficient for him to see that there is a suit in equity, or was one, in which the court appointed a receiver of property; that such receiver was authorized by the court to sell the property; that a sale was made under such authority; that the sale was confirmed by the court, and that the deed accurately recites the property or interest thus sold. If the title of the property was vested in the receiver by order of the court, it in that case passes to the purchaser. He is not bound to inquire whether any errors intervened in the action of the court, or irregularities were committed by the receiver in the sale.

2. If the court is deceived by the report of a receiver, or master, as to the conditions upon which property is sold under its order, and the purchaser participates in the deception, the court can, at any time before the rights of third parties have intervened, set the whole proceedings, including the deed, aside. But after the rights of such third parties have intervened, its authority in that respect can only be exercised consistently with protection to those rights.

3. If the receiver omit to perform his whole duty, by which the parties are injured, or commit any fraud upon the court, and the rights of third parties have so far intervened as to prevent the court from setting the proceedings aside, the injured parties must seek their remedy personally against that officer, or on his official bond.

APPEAL from the Circuit Court for the Southern District of Mississippi; the case being thus:

The Commercial Bank of Natchez owning certain property, and among it a dwelling attached to its banking-house, its property was placed, on an application for a forfeiture of its charter, in the hands of one Robertson as trustee. Several of the stockholders, represented by a certain Bacon, being dissatisfied with what was thus done, filed a bill in the court below against this Robertson, and all the property was taken from him and put into the hands of one Ferguson, as receiver. Hereupon, in November, 1857, the receiver was authorized by the court to sell the lands or any part of them *upon such terms as he may deem best for the interest of all parties,* provided that he shall not sell any of said lands upon a longer credit than one, two, and three years from the time of sale.

The order authorizing the sale adding:

" *In all cases he is to retain a lien* or *take a deed of trust on the lands sold.*"

On the 12th of March, 1860, the receiver sold the dwelling attached to the bank to one Gustavus Calhoun, and on the same day executed to him a conveyance of the premises sold, reciting in the conveyance that he executed it as receiver, and " for and in consideration of the sum of nine thousand and five hundred dollars, *to him in hand paid by the said Gustavus Calhoun*, the receipt whereof is hereby acknowledged." It contained a covenant of warranty against all persons claiming through the receiver. The deed was duly recorded within five days after the sale, and Calhoun entered into and kept possession under it.

*After* the receiver had thus executed his conveyance—that is to say, on the 19th of May, 1860—the receiver reported that he had " sold the dwelling attached to the banking-house in Natchez for $9500, and prayed that the same may be confirmed." He also referred to certain sales of land in Bolivar County, in 1858, in which the purchasers had allowed the lands to be sold for taxes. The court ordered that this report, and a report made by a commissioner in the case, be referred to the master in chancery " to examine into and report upon the sufficiency and correctness of said reports."

The master, in conformity to this order, made his report on 29th May, 1860. He stated that he had had the reports under consideration and found them correct, and recommended their confirmation. The last portion of the report of Ferguson, the receiver, respecting the redemption of lands in Bolivar County, he referred to the court for consideration.

At the same term, 1860, the court ordered that the report of the master in chancery *be in all things confirmed*, reserving for consideration until the next term the matter referring to the lands in Bolivar County.

The reader will have observed that neither in the master's report of sale nor anywhere else in these proceedings is the name of the person mentioned to whom the sale was made,

nor the terms on which it was made, as whether for cash or on credit. And, in point of fact, Calhoun did not pay any cash, but, on the contrary, gave his promissory note to the receiver, Ferguson, for the price.

In this state of things, and Calhoun being in possession of the property thus bought by him, and occupying it as his dwelling, his son-in-law, one Blackburn, was desirous of raising money to carry on the business of planting, in which he was engaged on a plantation owned by Calhoun, his father-in-law. A firm in New Orleans, Given, Watts & Co., agreed to furnish it to him upon his own notes, provided these were secured by a mortgage of real estate of Calhoun. Accordingly, on the 22d of January, 1867, Blackburn gave the firm his notes (three notes for $4000 each, falling due respectively in October, November, and December, 1867), and Calhoun and wife executed, on the same day, a mortgage of the property bought, and occupied at the time as above mentioned. Prior to its execution, Given, Watts & Co., to assure themselves of the validity of Calhoun's title, caused an inquiry to be instituted, and received from the clerk of the court a certificate that there were no incumbrances. Given, Watts & Co. sold one of these notes to the Northern Bank of Kentucky, and, becoming bankrupt, the other two passed to their assignees in bankruptcy.

Calhoun became insolvent, and one Koontz, who had succeeded Ferguson as receiver of the Commercial Bank of Natchez, finding that Calhoun had never paid his note for $9500, now proposed to him to cancel the conveyance that had been made to him. Calhoun agreed to do this, and thereupon made a deed of the premises to Koontz; after which Koontz applied to the court on an *ex parte* proceeding and obtained an order reciting the invalidity of the sale by Ferguson to Calhoun and cancelling the same.

In this state of things the Northern Bank of Kentucky and the assignees of Given, Watts & Co. filed a bill of foreclosure in the court below, against Koontz and also against Calhoun and wife, praying a foreclosure of the mortgage and payment of the three notes, or of what was due on them.

The court, finding the amounts due the complainants respectively, decreed a foreclosure *nisi*, and ordered Koontz to hold the property subject to payment of the amounts thus found, and enjoined him from setting up any title under the conveyance made to Koontz adverse to the rights of the complainants under the mortgage. From this decree Koontz appealed.

*Mr. W. W. Boyce (a brief of Mr. W. P. Harris being filed), for the appellant:*

1. A report of a sale without the name of the purchaser, or the terms of sale (or whether for cash or credit), is in chancery practice a report fatally defective; in other words, no report. If there was no report there was nothing on which a confirmation could act; and, therefore, no confirmation. The whole matter remained in the control of the court, and it properly cancelled Ferguson's deed.

2. The deed was executed and delivered before there was any report of a sale, a wholly irregular proceeding. A deed should have been returned with a report of the sale, to be delivered when the sale was confirmed and the purchase-money paid.

3. The execution of the deed to Calhoun was void for want of authority to execute it, unless there was taken contemporaneously with it "a lien or deed of trust." The authority to sell existed only as a means to an end; the end being to take a lien or deed of trust.

These difficulties are obvious and conclusive of the case, unless in some way avoided. The argument will be that Given, Watts & Co. were *bonâ fide* purchasers without notice, and not affected by errors of the court or receiver.

But were they without notice? The deed by which Calhoun obtained a color of title, was of record for purposes of notice. It disclosed on its face that Calhoun's purchase was not from a party holding title, but from an officer of court acting under orders, and by which a report and confirmation of the sale was requisite. This order set forth the terms of sale. The deed led the purchaser to the record of the case

of *Bacon et al.* v. *Robertson*, and from that he saw an irregular proceeding, a sale and deed delivered long before there was any report of the sale. He saw a report which did not give the name of the purchaser, or the terms of the sale, or any direct order of confirmation. He knew that sales on credit were incomplete until payment. All this put him upon inquiry, and is constructive notice of the actual facts. He did not inquire of Calhoun whether he paid the purchase-money. The condition of the record was such that it put on him as a prudent man the duty of further investigation.

Mr. *P. Phillips* (a brief of Messrs. *Nugent* and *Yerger* being filed), contra.

Mr. Justice FIELD delivered the opinion of the court.

There is only one question in this case which we deem it important to consider, and that is, whether the deed of the receiver, in the suit of *Bacon and others* v. *Robertson*, passed to Calhoun a good title to the property mortgaged by him; and upon this question we have no doubt.

The suit of *Bacon and others* v. *Robertson* related to the effects of the Commercial Bank of Natchez in the hands of the defendant, who had been appointed trustee under a proceeding for the forfeiture of the charter of the bank, and presented a case in which it was eminently proper that a receiver should be appointed of the effects. No question was made as to the legality or propriety of the appointment. The premises in question, consisting of a house and lot in Natchez, constituted a portion of these effects. The order of the court, entered at its November Term in 1857, empowered the receiver to sell the lands, or any part of them, belonging to the bank, upon such terms as he might deem best for the interest of all parties, provided he should not sell any of the lands on a longer credit than one, two, or three years; and in all cases should retain a lien or take a deed of trust on the lands. Under the authority thus conferred, the receiver sold the property in controversy in March, 1860, to Calhoun, for the sum of nine thousand and nine hundred

dollars, and executed and delivered to him a deed of the premises, reciting that it was made by the grantor, as receiver, and in consideration of the sum specified, the receipt of which it acknowledged. Soon afterwards the deed was placed on the records of the county.

In May, following, the receiver reported to the court that he had sold the premises for the consideration stated, and prayed that the sale might be confirmed. The court referred the report to a master to examine into its sufficiency and correctness. The master reported that it was correct, and recommended its co..firmation. The court thereupon, ordered that the master's report be in all things confirmed. This confirmation carried with it the confirmation of the sale into which the master was required to examine.

Soon afterwards Calhoun went into possession of the premises purchased under the deed from the receiver, and remained in possession in person, or by his tenants, up to the period when the mortgage in suit was executed, in January, 1867, and until his surrender to Koontz, the present receiver.

There was undoubtedly an irregularity committed by the receiver in executing his conveyance before the sale was confirmed by the court, and until then the contract of purchase was not binding upon that officer. But his conveyance was not on that account void; it was only voidable. If the deed had been executed after the confirmation, it would have taken effect by relation as of the day of the sale.* If the confirmation had been denied, the deed, resting upon the sale, would have become inoperative. But the confirmation having been made, all objection to the time at which the deed was executed is removed.

The authority conferred by the court upon the receiver to sell, carried with it authority to give to the purchaser evidence of a transfer of title. And that the court intended he should exercise this implied authority, by executing deeds where land was sold, is evident from the requirement that

---

* Fuller *v.* Van Geesen, 4 Hill, 171, and cases there cited.

he should, in case of sale on credit, retain a lien or take a deed of trust on the lands from the purchaser.

The report of the receiver does not state in terms that the sale to Calhoun was made in cash; it only discloses the fact that a sale was made, and specifies the amount of the purchase-money. But the only inference which the court could reasonably draw from the language, in absence of any statement that the sale was on credit, was undoubtedly that it was a cash sale. It is clear that the court so understood the transaction. The receiver so treated it by the immediate execution and delivery of a deed reciting the payment of the stipulated consideration, and omitting to take in return any trust-deed from the purchaser.

If the fact were otherwise, and the court was deceived by the report of the receiver or master, and the purchaser participated in creating the deception, it could, undoubtedly, at any time before the rights of innocent purchasers had intervened, have set the whole proceedings, including the deed, aside. But after the rights of such third parties had intervened, its authority in that respect could only be exercised consistently with protection to those rights.

A purchaser under a deed from a receiver is not bound to examine all the proceedings in the case in which the receiver is appointed. It is sufficient for him to see that there is a suit in equity, or was one, in which the court appointed a receiver of property; that such receiver was authorized by the court to sell the property; that a sale was made under such authority; that the sale was confirmed by the court, and that the deed accurately recites the property or interest thus sold. If the title of the property was vested in the receiver by order of the court, it would in that case pass to the purchaser. He is not bound to inquire whether any errors intervened in the action of the court, or irregularities were committed by the receiver in the sale, any more than a purchaser under execution upon a judgment is bound to look into the errors and irregularities of a court on the trial of the case, or of the officer in enforcing its process.

If the receiver in the one case, or the sheriff in the other,

omit to perform his whole duty, by which the parties are injured, or commit any fraud upon the court, and the rights of third parties have so far intervened as to prevent the court from setting the proceedings aside, the injured parties must seek their remedy personally against those officers, or on their official bonds. The interest of parties in the controversy will generally induce such attention to the proceedings as to prevent great irregularities from occurring, without being brought to the notice of the court.

The decree of the court is

AFFIRMED.