Fleming v. Bale.

We see no other matter requiring notice, and the judgment will be affirmed.

All the Justices concurring.

---

SARAH FLEMING, *et al.*, v. JOHN W. BALE.

PROBATE COURT, *Jurisdiction of; Administrator's Deed, Valid.* On the 18th day of January, 1877, an administrator filed in the office of the probate court of Allen county a petition, asking for authority to sell certain real estate belonging to the estate, or so much thereof as might be necessary (after exhausting the personal property), to pay the debts of the estate, and setting forth sufficient reasons therefor. The probate court then (after entering certain recitals) made the following order, to wit: "Whereupon it is ordered that said administrator cause notice of the pendency of this proceeding, and of the time of hearing the same, by publishing a notice in the Humboldt *Union* two consecutive weeks; and it is further ordered that the said petition be set for hearing on the 29th day of January, at 1 o'clock P. M." The Humboldt *Union* was a weekly newspaper, published in said Allen county; and the administrator published a notice therein on January 20th and 27th, 1877, stating, among other things, that the petition would "come on for final hearing on the 29th day of January, A. D. 1877, at the hour of 10 o'clock A. M., at the probate court room, in the county aforesaid." The probate court heard said petition on January 29th, 1877, and ordered that said property, or so much thereof as might be necessary, be sold "at public or private sale for cash in hand or on deferred payments, not to exceed two years, with interest," etc. The probate court at the same time appointed the appraisers, who were disinterested householders and competent in every other respect to act. After qualifying, they appraised the property—it being a certain quarter-section of land. They appraised the east half at $266.66, and the west half at $800. The administrator then sold the property at private sale for $950—that sum being $150 more than three-fourths of the appraised value. The administrator then made a return of his proceedings to the probate court, and the court, after carefully examining the same, confirmed the sale, and ordered the administrator to make a deed for the property to the purchaser, which the administrator did, and the purchaser afterward took possession of the property under such deed. Afterward the heirs at law of the administrator's intestate commenced this action to eject the purchaser from the premises. *Held,*

That the action cannot be maintained; that the proceedings of the probate court and said sale and deed are valid; that none of the defects or irregularities in the proceedings of the probate court, or in the appraisement or sale of said property, are sufficient to deprive the probate court of jurisdiction, or to defeat its jurisdiction, or to render its proceedings or said sale or deed, void.

### *Error from Allen District Court.*

EJECTMENT, brought by *Sarah Fleming* and three others against *Bale*, to recover certain real estate. Trial at the November Term, 1878, of the district court, and judgment for defendant. The plaintiffs bring the case to this court. the facts appear in the opinion.

*G. P. Smith*, for plaintiffs in error.

*Cates & Keplinger*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of ejectment, brought by Sarah Fleming and others against John W. Bale, to recover certain real estate. Both parties claim under Eli Fleming, deceased. The plaintiffs claim as the heirs at law of said Eli Fleming; and the defendant claims under an administrator's deed, executed to him by James W. Ellis, administrator of the estate of said Eli Fleming. The judgment of the court below was in favor of the defendant, and the plaintiffs now bring the case to this court.

It is admitted that the plaintiffs are the heirs at law, and that Ellis is the administrator of said Eli Fleming, and that said administrator's deed was regularly executed by the administrator to the defendant; but it is claimed by the plaintiffs that there were such great irregularities in the proceedings of the probate court, and in the appraisement and sale of the property, that no title to the property ever passed to the defendant.

It will be observed that the plaintiffs' attack upon the proceedings of the probate court is collateral only, and therefore that no irregularities in such proceedings can avail the plain-

tiffs anything unless such irregularities go to defeat the jurisdiction of the court. It will also be observed (by an inspection of the constitution and statutes of Kansas) that the probate courts of this state are *courts of record*, having exclusive original jurisdiction of all such matters as were attempted to be brought within the jurisdiction of the probate court in the present case, and therefore that a want of jurisdiction will not be presumed, but must be made to affirmatively appear. With these preliminary remarks, we shall now proceed to consider the objections urged by the plaintiffs against the proceedings of the probate court, and against the appraisement and sale of said property.

On the 18th day of January, 1877, the administrator filed in the office of the probate court of Allen county a petition asking for authority to sell said real estate, or so much thereof as might be necessary (after exhausting the personal property) to pay the debts of the estate, and setting forth sufficient reasons therefor. The probate court then (after entering certain recitals) made the following order:

"Whereupon it is ordered, that said administrator cause notice of the pendency of this proceeding and of the time of hearing the same, by publishing a notice in the Humboldt *Union* two consecutive weeks; and it is further ordered, that the said petition be set for hearing on the 29th day of January, at 1 o'clock P. M."

The Humboldt *Union* was a weekly newspaper, published in said Allen county; and the administrator published a notice therein on January 20th and 27th, 1877, stating among other things that the petition would "come on for final hearing on the 29th day of January, A. D. 1877, at the hour of ten o'clock A. M., *at the probate court room in the county aforesaid.*" The probate court heard said petition on January 29, 1877, and ordered that said property, or so much thereof as might be necessary, be sold "at public or private sale, for cash in hand, or on deferred payments not to exceed two years, with interest," etc. The probate court at the same time appointed the appraisers, who were disinterested householders, and competent in every other respect to act. After

qualifying, they appraised the property now in controversy, (viz., the northeast quarter of section 19, in township 25, range 18, in said Allen county,) at $1,066.66. They appraised the east half and west half separately, however — the east half at $266.66, and the west half at $800. The administrator then sold the property at private sale to the defendant in this action, for $950. Whether the sale was for cash in hand, or not, is not very definitely shown, nor is it material, but we would infer from the language used that it was for cash in hand. At least it would seem that the money was paid before the deed was made. The administrator made a return of his proceedings to the probate court, and the court, after carefully examining the same, confirmed the sale, and ordered the administrator to make a deed for the property to the purchaser. Afterward the administrator made said deed, and delivered it to the purchaser, who took possession of the property under it. And afterward the plaintiffs commenced this action to eject the purchaser from the premises.

We shall now consider the points made by the plaintiffs, the said heirs of Eli Fleming.

I. They claim that the said service of the notice of the hearing of the petition to sell said real estate to pay the debts of the estate was void, because it was made by publication only, while the law and the circumstances of this case required, as they claim, that the service should have been made personally upon them. All the proceedings were had in Allen county, and all the plaintiffs resided therein, and for this reason the plaintiffs claim that the service should have been personal, and not by publication. But does the law require it? Up to 1868, the laws of Kansas authorized only two ways of making such service — either by publication in a newspaper for six weeks, or by posting ten handbills in ten public places for twenty days. (Comp. Laws 1862, p. 531, § 131.) In 1868 the law was changed so as to read as follows:

"SEC. 118. The court shall require notice of the petition,

and of the time and place of hearing the same, to be given for such length of time and in such manner as the court may see proper." (Gen. Stat., p. 455; Comp. Laws 1879, p. 424.)

Under this statute, the service of the notice may be made "in such manner as the court may see proper." It may be made in more than two ways: it may be made by publication or by posting handbills, or by serving the notice personally, or by any other proper way. If the person interested resided in New York, it might possibly be made upon him by letter. But of course the court should in all cases exercise its best judgment, and for any abuse of discretion error would lie. The service should be such that the parties interested would in all probability get the notice. And we must suppose that probate courts will do their duty. We cannot suppose that probate courts will conspire with administrators to rob or defraud widows or orphans, unless they are restrained from exercising some of the powers which the legislature has seen fit in its wisdom to confer upon them. We think that the service of the notice in cases like this, may be made by publication, at the discretion of the probate court. In our opinion, however, personal service (where it could be made upon adult parties) would be much better. It is not claimed, however, that the plaintiffs in this case did not have ample notice in fact of the hearing of said petition, although they claim that they had none in law.

II. It is claimed that no affidavit for publication, such as is required by § 73 of the civil code, was filed with the probate court. The only answer to this is, that the law does not require it.

III. It is claimed that the order of the probate court did not state, nor require the notice to state, where the petition was to be heard. This was an irregularity; but of course the petition was to be heard at the probate court room, and the notice itself so stated.

IV. It is claimed that said order did not state the year when said petition would be heard. This order was made on January 18, 1877. The year had already been men-

tioned, and the court then "ordered that the said petition be set for hearing on the 29th day of January, at 1 o'clock P. M.," and the notice stated that the petition would be heard on January 29, 1877. We think this is sufficient.

V. It is claimed that the order stated that the hearing would be at 1 o'clock P. M. of January 29th, while the notice stated that it would be at 10 o'clock A. M. of that day. We do not think that this variance is fatal. It must be remembered that this is a collateral attack upon the proceedings, and not a direct attack.

VI. It is claimed that the order which was made on January 18, 1877, required that the notice should be published "in the Humboldt *Union* two consecutive weeks," which publication was an impossibility, as the hearing was to be had, and was had, on January 29, 1877, giving only eleven days instead of two weeks, for such publication. Now the whole of said order must be considered together, and so considering it, it shows that the probate court simply meant that the notice should be published in the Humboldt *Union* two consecutive times — that is, that the notice should be inserted in the next two issues of the Humboldt *Union*, which should be published after the order was made and before the hearing was to be had, and on January 20th and 27th, 1877, and this was done. The notice was to be published "two consecutive weeks," not *for* two consecutive weeks, and by the phrase "two consecutive weeks," the probate court evidently meant "two consecutive times." That the order must be so construed, see *State v. Yellow Jacket Co.*, 5 Nev. 416; *Swett v. Sprague*, 55 Me. 190; *Banta v. Wood*, 32 Iowa, 470, 474. This case differs from that of *Reed v. Sexton*, 20 Kas. 195. In that case the language of the act commented on showed that four full weeks must elapse after the commencement of the publication in the newspaper, or after the posting of the notices, before the order of the commissioners could go into effect. (Laws of 1872, p. 384, § 2.) In this case, the order of the probate court shows that the hearing of the petition was to be had in eleven days after the order was made, and therefore that the probate

court meant by the language used, simply two insertions in the newspaper, and that two full weeks should elapse. Neither is this case like that of *Mickel v. Hicks*, 19 Kas. 578. In that case the notice was not published six weeks, as required, nor even five weeks; nor were there six insertions of the notice in any weekly newspaper, as required. Hence, that case is no precedent for this. We do not think that any of the foregoing irregularities or defects can vitiate the proceedings of the probate court when attacked collaterally, as in this case.

VII. It is claimed that the order of the probate court to sell the property is void, because the order was in the alternative—to sell "at public *or* private sale," and "for cash in hand *or* on deferred payments." We think the probate court erred in not directing how the property should be sold; but it was mere error. It does not render the proceedings void.

VIII. It is claimed that all the proceedings are void because the probate court appointed the appraisers. We would think that the administrator should have appointed them, but the administrator adopted their appointment and used them, and they were competent in every respect; and therefore we think that the error was an immaterial one.

IX. It is claimed that the sale is void, not as we understand because the property was appraised in separate tracts and then sold in gross, but because one or the other of the tracts so appraised and sold may have been sold for less than three-fourths of its appraised value. There is nothing in the record that tends to show that any portion of the tract was sold for less than three-fourths of its appraised value, while there is something in the record that tends to show otherwise. The administrator returns that the property was sold for "not less than three-fourths of the appraised value;" and the figures returned by him show that the entire tract was sold for $150 more than three-fourths of its appraised value. Besides, the sale was confirmed by the probate court and a deed was executed by the administrator, and the statute says that such a deed "shall be received in all courts as presump-

tive evidence that the executor or administrator in all respects observed the directions and complied with the requisitions of the law." (Executors' and Administrators' Act, § 133, Comp. Laws 1879, p. 426.)

The judgment of the court below will be affirmed.

All the Justices concurring.