## BAYLY AND OTHERS

*v.*

## GAINES AND OTHERS.

*(Supreme Court of Appeals ·of Virginia, June 16, 1887.)*

[2 S. E. Rep. 739.]

**Receivers—Pending Appointment of Trustees—Power to Lease.***

Where a court has removed trustees appointed by will to manage an estate, for mismanagement, and, pending the appointment of their successors, placed the property in the hands of a receiver, it may remove such receiver in its discretion, and appoint proper persons to take charge of and manage the property as trustees under the terms and conditions of the will; but it cannot declare void a lease of a portion of the property made by such receiver in good faith, in accordance with the provisions of the will, and in the interest of the beneficiaries therein named.

Appeal from circuit court of Fauquier county.

*A. D. Payne,* for appellants.

*James V. Brooke,* for appellees.

FAUNTLEROY, J., delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Fauquier county, pronounced on the twenty-fourth day of December, 1885, in the chancery cause therein pending of Gaines v. Utterbach et als. It appears from the record that John Shumate died in the county of Fauquier, in the year 1872, possessed· and seized of a large personal and landed estate, which by his will he bequeathed and devised

---

*See foot-note to Davis *v.* Snead, 33 Gratt. 705 (Va. Rep. Anno.).

to trustees named in his said will, to be held in trust for the benefit of Catherine Gaines, a colored woman, and certain children of hers, supposed to be the natural children of the said testator. The said will provides that the estate of the testator, John Shumate, shall remain as a continuing trust, subject, in the hands of the trustees therein named, William J. Morgan and Wilfred Utterbach, until the death of the said Catherine Gaines and her said children ; and, at the death of the last surviving of the said children, the said trust shall cease and determine, and the property, subject of the said trust, shall pass and devolve to the descendants of the said Catherine Gaines ; but that, during the lifetime of the said Catherine Gaines, or of the last surviving of her said children, a designated portion of the said real estate shall be held as a home for the said Catherine Gaines and her said children; and so much of the income from the balance of the estate as shall be necessary for that purpose be devoted and applied by the trustees to putting and keeping in eligible condition the said designated homestead, and to the maintenance and comfort of the said Catherine Gaines and said children, and to the education of the said children.

William J. Morgan, one of the trustees named in the will, died in the lifetime of the testator ; and, there being a controversy about the validity of the will of the said Shumate, Wilfred Utterbach, the other named trustee, was appointed, by order of the court, curator of his estate, consisting of a large tract of productive land lying in the upper part of Fauquier county, and personalty of the value of more than $5,000. In 1884, after 11 years of undisturbed management and control, the *ex parte* accounts of Utterbach, as curator, showed that the whole of the personalty of the estate had been consumed, and the rents, issues, and profits of the real estate likewise, and the estate brought in debt to the curator, the said Utterbach, in the sum of $274.06.

This suit was brought by the aforesaid beneficiaries under the will of John Shumate, to surcharge and falsify the said *ex parte* accounts of the said curator, to bring about a fair and just settlement, and to take the estate out of the hands of the said curator.   On the ninth day of September, 1884, the circuit court of Fauquier entered a decree revoking the powers of the said Utterbach as curator, with liberty to the complainants to surcharge and falsify his accounts ; and adjudging, ordering, and decreeing, that "Sampson P. Bayly and H. Clay Bayly be, and are hereby, appointed receivers of the rents, issues, and profits of the real estate with which the late John Shumate died seized and possessed, and of the personal property of the said Shumate.   Said receivers shall receive no money as receivers, or exercise no powers as such, until they shall have executed a bond, with approved security, to the commonwealth of Virginia in the penalty of twelve thousand dollars, conditioned for the faithful performance of their duties as such receivers.   And said receivers will take possession of the real estate of the late John Shumate, and rent out the same in accordance with the directions of the will of the said Shumate ; but reserving as a home for the said Catherine Gaines, Taylor Gaines, wife and child, Adelaide Webb and child, Nannie M. Gaines, and Catherine Gaines, or such of them as may desire to occupy the same, the one hundred-acre tract in said will mentioned, lying on the east side of the graded road from Marshall to Orleans, after putting the house on said one hundred acres in a habitable and comfortable condition ; and said receivers will collect all rents, issues, and profits of said real estate now due, or to become due, and take possession of all personal property of said estate, and collect all debts due the same.   And the said receivers will settle their accounts, from year to year, in this suit, before a master commissioner thereof," etc.

The said S. P. Bayly and H. Clay Bayly duly qualified

as receivers under the aforesaid decree, gave the required bond, and entered upon the discharge of their duties as such. In obedience to the express directions of the circuit court contained in the decree appointing them, they proceeded, with much outlay of labor and expense, to put the homestead 100-acre tract in "habitable and comfortable condition" for the use and occupancy of the said beneficiaries under the will of John Shumate, and to rent out the residue of the said real estate, in "accordance with the directions of the will of said Shumate." After having procured a thorough and minute inspection of the condition and requirements of said lands by five of the neighboring farmers, the excellence of whose judgment is well known, and upon their advice as to terms, cultivation, and such conditions "as shall best secure it against depreciation and tend to its improvement," the said receivers, S. P. Bayly and H. Clay Bayly, rented out the said residue of the real estate for a term of five years, with the privilege of renewal for a second term of five years, to T. J. Bayly, by a written lease under seal dated September 1, 1885.

The said T. J. Bayly, in pursuance of the said contract of renting, gave up every other business engagement, entered on the said land, and expended large sums of money and time and attention in seeding, cleaning, equipping, and improving the said land. On the sixteenth of December, 1885, a rule of the circuit court was served on the said S. P. Bayly and H. Clay Bayly, receivers, "to show cause, on the twenty-first of December, why their powers as receivers should not be revoked, for causes then to be shown, or, on default of such removal, why they should not be required to execute a new bond." On the twenty-first of December the said receivers filed their answer to this said rule, with exhibits ; and, on the twenty-second of December, T. J. Bayly filed his petition praying to be made a party to the cause, and setting forth the wrong and injury he would

sustain should the powers of the receivers be revoked, and their contract of renting with him be annulled. On the twenty-fourth of December, 1885, the court entered a decree in the cause practically revoking the authority of the said receivers, and annulling the aforesaid contract of renting with the said T. J. Bayly, and appointing one James W. Marshall, trustee, to carry out the provisions of the will of John Shumate. From this decree both the said S. P. Bayly and H. Clay Bayly, receivers, and the said T. J. Bayly, have obtained this appeal.

The appellants S. P. Bayly and H. Clay Bayly were appointed receivers by the circuit court pending the suit for the removal of Utterbach, the curator, and for the settlement of his accounts as such, and for the care and management of the estate, until the court should determine whom to appoint as trustee to carry out the trust under the will ; and though neither in the notice of the rule, nor upon the hearing, was there any cause for removal, or revocation of the powers, of the receivers, as such, assigned, nor any intimation whatever that their official bond was insufficient or precarious, yet we do not think the circuit court erred in the decree complained of, so far as it practically worked the amotion or cessation of their functions as receivers in the cause by the appointment of a substituted trustee under the will, in the place and stead of the two named by the testator, one of whom had died in the testator's lifetime, and the other having renounced the trust. In fact, there was no revocation of the powers of the receivers in the decree, in which the court says : "But being of opinion that the appointment of a trustee, as hereinafter provided for, renders unnecessary the continuance of the authority of the receivers in this cause, and terminates the same, doth adjudge, order, and decree that James W. Marshall be, and he is hereby, appointed and substituted trustee, to execute any and all of the powers conferred by the said will on the trustee therein

named." The office of receiver is "purely ministerial and temporary in its nature." 2 Bouv. Law Dict. 419. "The receiver appointed is the officer and representative of the court, subject to its orders, accountable in such manner and to such persons as the court may direct ; and having in his character of receiver no personal interest but that arising out of his responsibility for the correct and faithful discharge of his duties, it is of no consequence to him how, when, or to whom, the court may dispose of the funds in his hands, provided the order or decree of the court furnishes to him a sufficient protection." Beverley v. Brooke, 4 Gratt. 208. "He is an indifferent person between the parties, appointed by the court to receive the rents, issues, or profits of land or other things in question in the court pending the suit." Edw. Rec. 2 ; Kerr, Rec. 2. "His appointment is provisional only. It is the court itself which has the care of the property in dispute. The receiver is but the creature of such court." Edw. Rec. 3. "Courts of equity have the same power to remove as to appoint. The decision of a court removing a receiver, being a matter of sound discretion, is not, ordinarily, reviewable in an appellate court." High, Rec. §§ 824, 825. But in this case there was no removal. The purpose of their temporary appointment having been answered, and the necessity for the continuation of their offices as receivers in the cause no longer existing, in the judgment of the court who appointed them, they became *functus officio*. Their mission ended, and they ceased to exist. "When necessity for the office ceases to exist, the office itself must terminate, and the receiver be discharged ; and when a court of equity has temporarily taken possession of property by the hands of its receiver, until the proper person can be determined who is entitled to take it, the courts will not continue such possession after the necessity ceases." High, Rec. § 832.

The circuit court, by its decree complained of, annulled

and declared void the contract of renting made by its receivers with the appellant T. J. Bayly, of date September 1, 1885, "being of opinion that the said contract is, in its nature, one beyond the lawful authority and powers of the receivers in this cause to make without the express authority of the court." In this case there were no rival claimants, no creditors entitled to security for their debts, nor any liens to be ascertained, marshaled, or enforced; and in the decree appointing the receivers, besides minute and all-comprehensive powers and duties specified for the receivers to exercise and perform in the management, control, and conservation of the estate, real and personal, they are explicitly ordered to "take possession of the real estate of the late John Shumate, and rent out the same in accordance with the directions of the will of said Shumate." They are thus positively ordered to rent out the land, and to take the will of John Shumate as the chart of their action. The will, after dedicating the 100-acre tract as a reservation for the home of the beneficiaries, and directing its being put in comfortable and habitable order, and kept so, for that purpose, says "that they [the trustees named to manage the property, with whose authority the receivers are invested by the court, with the will for their chart] shall rent out from year to year, or for terms of years, the rest of my real estate in such parcels as to them may seem judicious and proper, and in such manner as shall best secure it against depreciation, and tend to its improvement," etc. The receivers were thus fully and expressly empowered, and, indeed, imperatively ordered, by the will, and by the decree of the court, to lease out the land, as they did do, in perfect good faith, upon careful consultation with the best and most disinterested advisers, upon terms strictly and carefully conservative of the best interests of the trust, subject, in a written lease under seal, to the appellant T. J. Bayly, who, acting upon faith in his solemn contract with the court, through its authorized agents,

expended large outlay of money, labor, and time, in equipping and improving the land for his tenancy for a term of five years.

The contract of a court is as inviolable as that of an individual ; and, within the limits of its jurisdiction, it has the same right to make a contract.   Davis v. Snead, 33 Gratt. 710.   "When the rights of third parties have intervened, the authority of the court over the receiver can only be exercised consistently with the protection of those rights." Koontz v. Northern Bank, 16 Wall. 202.

The appellant, T. J. Bayly, having acquired the rights of a tenant under his contract with the court through its plenary agents, has the right to insist, as he does insist, upon the inviolability of that contract, which, it is observable, is not an executory but an executed contract.   The court, by its decree, did not direct its agents to report the contract or contracts of renting for confirmation by the court, but ordered them to proceed according to the directions of the will, and to settle their accounts before a master commissioner from year to year indefinitely.

We are of opinion that the circuit court erred in decreeing the said contract of September 1, 1885, between S. P. Bayly and H. Clay Bayly, receivers, and T. J. Bayly, to be null and void, and that the said decree is erroneous in this particular, and must be reversed and annulled ; and that the said contract of lease be enforced and performed according to its terms.