ALICE BELLE THOMPSON v. ABBIE C. BURGE.

No. 11213.

1. LIMITATION OF ACTION—*Ejectment—Minor Heirs.* A right of action in ejectment for the recovery of land sold by an administrator, brought by one of the heirs of a deceased person, is saved to a minor, under section 11, chapter 95, General Statutes of 1897 (Gen. Stat. 1889, ¶ 4094), who may bring the action within two years after the disability of infancy has been removed.

2. PRACTICE, PROBATE COURT—*Sale of Real Estate—Notice.* A petition for the sale of real estate was, by order of the probate court, set for hearing, and notice of the same required "for two weeks prior to the 9th day of August." The notice was published on July 29 and August 5, only eleven days intervening between the first publication and the day of hearing. The sale was confirmed by the probate court. *Held*, that the proceedings were valid as against collateral attack, the probate court having ratified such a notice as it had power to require in the first instance.

3. ———— *Change of Place of Sale of Real Estate.* For the reason above stated, the adjournment of the sale by the administrator from the court-house door, where it was advertised to take place, to another place in the county, near the land in question, did not render the sale void, being an irregularity cured by confirmation.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed May 6, 1899. Affirmed.

STATEMENT.

THIS was an action in ejectment commenced by Alice Belle Thompson in the court below for the recovery of the possession of 160 acres of land and for the value of its use and occupation. The case was tried upon an agreed statement of facts, supplemented by certain record evidence and oral testimony. The agreed facts are as follows:

"1. The southwest quarter of section 28, township 10, range 14, in Shawnee county, Kansas, was, on and prior to July 7, 1880, owned by Samuel K. Thompson, who died on July 7, 1880, an inhabitant of Shawnee county, Kansas.

"2. Alice L. Thompson had been the wife of Samuel K. Thompson, and had been divorced from him prior to his death, and in the decree of divorce said land was by a court of competent jurisdiction decreed to be the property of Samuel K. Thompson, and that Alice L. Thompson had no interest therein.

"3. At the time of his death Samuel K. Thompson left surviving him, as his sole and only heirs, two daughters, Mary Louise Thompson, born in November, 1873, and plaintiff Alice Belle Thompson.

"4. Mary Louise Thompson died May 14, 1884, unmarried and without issue, leaving surviving her Alice L. Thompson, her mother.

"5. That certain proceedings were had in the probate court of Shawnee county, Kansas, in said estate of Samuel K. Thompson. Preliminary proof of the papers and record in the matter of said estate in probate court and the record of the register of deeds' office of Shawnee county, Kansas, relating to said land, and offered in evidence, shall be waived, but subject to all other legal objections, the validity and effect of which evidence, records and papers shall be determined by the court.

"6. The land above described was conveyed to the defendant Abbie C. Burge, November —, 1891, since which time she has been absent from the state of Kansas."

In addition to the above, it was shown that there was an affidavit of the death of Samuel K. Thompson filed in the probate court of Shawnee county, Kansas, and that Walter Oakley was appointed administrator of his estate. Oakley was the principal creditor. The petition did not allege that deceased was a non-resident of the state or a resident of Shawnee county. Pursuant to a petition filed by the administrator, asking for a sale of the land in controversy, the court set the hearing for August 9, and ordered notice of the same to be given for two weeks prior to the said 9th. day of August. The first publication was on July 29, and the second on August 5. The hearing was had August 9. The land was ordered sold at the door of the court-house in the city of Topeka, on September 11, 1880, and so advertised. No sale was made on that date, but the same was adjourned until September 22, at the farm of Lucy Ayers, in Silver Lake township, Shawnee county, and, according to the report of the administrator, was made to J. Q. A. Peyton and J. O. Hollenshade, for $497.25, subject to a mortgage of $300. The land was appraised at $1200. A deed was made by the administrator to the above persons. The sale was made by J. Q. A. Peyton as auctioneer, acting for Mr. Oakley, the administrator. The administrator made his report of the sale to the court, which was approved and confirmed. There were more claims proved against the estate than the amount of cash received for the sale of real estate. By mesne conveyances the title of the land in question came into the possession of the defendant Abbie C. Burge November 25, 1891, and her deed was recorded December 2 of the same year.

The plaintiff, Alice Belle Thompson, obtained a half interest in said land, which her sister, Mary Louise,

inherited, by deed from her mother. The plaintiff below was born June 19, 1876. She brought this action to recover this property within two years after she reached her majority. A jury was waived, the case tried by the court, and judgment rendered for the defendant.

*J. G. Slonecker*, and *Parker & Hamilton*, for plaintiff in error.

*Wm. R. Hazen*, for defendant in error.

The opinion of the court was delivered by

SMITH, J. : At the time the land was sold the plaintiff below was a minor about four years of age. This action was commenced within two years after she reached her majority. We think a right of action was saved to her under section 11, chapter 95, General Statutes of 1897. (Gen. Stat. 1889, ¶ 4094.) Said section 11 refers to the five paragraphs composing section 10. The remedy sought in this action is mentioned in the second paragraph of said section 10.

The first assignment of error relates to the jurisdiction of the probate court. It is claimed that the failure of the petition for the appointment of an administrator to allege that the deceased, Samuel K. Thompson, was an inhabitant of Shawnee county or a non-resident of the state at the time of his death, did not confer jurisdiction upon the probate court to do any act in relation to the administration of the estate. Authorities are cited from other states which fortify the position of plaintiff in error on this question. (*Estate of Moore v. Moore*, 33 Neb. 509, 50 N. W. 443.) It is admitted, however, that Samuel K. Thompson was, in fact, an inhabitant of Shawnee county at the time of his death. In *Brubaker v. Jones*,

23 Kan. 411, this court, speaking through Mr. Justice Valentine, said :

"The statute does not anywhere prescribe how the jurisdictional facts shall be ascertained; hence the probate court may ascertain them as best it can ; and if it ascertain them correctly, that is all that is required. All that is really necessary is that the jurisdictional facts shall exist as facts ; and how the court ascertains them is wholly immaterial. And when the court ascertains these facts and makes the appointment, the letters of administration are themselves *prima facie* evidence of such facts."

The probate court ascertained the fact that the deceased was an inhabitant of Shawnee county at the time of his death, and the issuance of letters of administration will be taken as *prima facie* evidence that the court had jurisdiction over the matter. The question raised by plaintiff in error does not longer admit of debate in this state.

When the petition to sell the real estate was presented, the court set the hearing for the 9th day of August, and ordered that notice of the same be given "by publication for two weeks prior to said 9th day of August." The first publication of the notice was on July 29 and the last on August 5. It is contended that, because only eleven days elapsed between the first publication and the day of hearing the petition, the order of sale was void. Section 118, chapter 107, General Statutes of 1897 ( Gen. Stat. 1889, ¶ 2902 ), relating to proceedings in the probate court for the sale of lands of decedents, reads : "The court shall require notice of the petition, and of the time and place of hearing the same, to be given for such length of time and in such manner as the court may see proper." The court had, under this section, full authority and discretion to fix the time of the notice as

he saw fit, and in doing so he was nowise restricted by law. The defect in the notice must have rendered the proceedings void in order to avail the plaintiff. If merely voidable, the defects cannot be reached by this collateral attack. The sale of the real estate was confirmed by the court, and a deed issued to the purchaser. In Freeman on Void Judicial Sales, section 44, it is said:

"As to the matters upon which a court is required to adjudicate in its order of confirmation, we see no reason why its decision should not be binding, and should not preclude the reassertion of any matter which was either passed upon by the court or which the parties might have had passed upon if they had chosen to bring it to the attention of the court. After a sale has been confirmed, it cannot be defeated by showing collaterally that there was a failure to appraise the property or a defect in the notices of sale, or that the administrator did not exact security for the payment of the purchase-money, or that the commissioner who made the sale was not authorized to make it."

There is a wide distinction between cases where the notice is defective and where there has been no notice at all. In the latter the court is without jurisdiction to act. (*Bryan v. Bauder*, 23 Kan. 95.) In *Fleming v. Bale*, 23 Kan. 88, a petition was filed January 18 in the probate court for the sale of real estate to pay debts of the deceased. It was ordered that the administrator cause notice of the pendency of the proceeding, and the time and hearing of the same, to be published in a newspaper for two consecutive weeks, and the hearing was set for January 29. The notices were published on the 20th and 27th of January. The court held that this order meant that the publication should be made two consecutive times. The court says: "We do not think any of the foregoing irregularities or defects can vitiate the proceeding of the

probate court when attacked collaterally, as in this case.'' See also *Wyant v. Tuthill*, 17 Neb. 495, 23 N. W. 342. In Nebraska, the rule as to sheriffs' and administrators' sales is the same.

It is next contended that the sale of the real estate, having been advertised to be held at the door of the court-house on September 11, was void when held elsewhere at a subsequent time. The statute provides that the sale shall be made by auction at the door of the court-house, or at such other place as the court may direct. ( Gen. Stat. 1897, ch. 107, § 130 ; Gen. Stat. 1889, ¶ 2915.) The court had power to fix the time and place of sale in the first instance at the place where and time when it was finally held. It ratified and confirmed the sale so made. It approved a sale made at a time and place which it had full power to fix in the original order. Mr. Freeman, in his work on Void Judicial Sales, section 44, says :

''With respect to chancery and probate sales, we apprehend that their confirmation has an effect beyond that conceded in Kansas to the confirmation of execution sales. The object of the proceeding for confirmation is to furnish an opportunity for inquiry respecting the acts which have been done under the license to sell. The court may, if it deems best, ratify various irregularities in the proceedings. If the officer changed the terms of the sale, the court may ratify his action, provided the terms, as changed, are such as the court had power to impose in the first instance.''

The strict rules applicable to tax sales cannot be applied to sales made under the supervision of the probate court. Tax sales are wholly regulated by statute, and no tribunal is created by law to direct or confirm them. They differ widely from sales ordered by a court of record. In *Howbert v. Heyle*, 47 Kan. 58, 27 Pac. 116, it is said :

'' It must also be remembered that the probate court

in this state is a court of record (Const., art. 3, § 8, Act Relating to Probate Courts, § 1) ; and, while it has jurisdiction only of particular classes of things, such as the care of the estates of deceased persons, minors, and persons of unsound mind, yet it has general jurisdiction of these things.   Hence all presumptions should be in favor of the regularity of all the proceedings of probate courts, within their jurisdiction, of the aforesaid particular classes of things, and such proceedings should seldom be held to be void when attacked collaterally, as in this case ; never, indeed, except where it is shown affirmatively that the court had no jurisdiction.''

In *Emery v. Vroman*, 19 Wis. 724, a guardian's sale of real estate was ordered by the probate court, in which order it was directed that certain other property should be first sold before resorting to the real estate in controversy.   The sale was confirmed.   The court said :

'' The lands were not sold in the order of the license. This defect, if such it was, was cured by the order of confirmation.   The same court from which the order emanated had, in its discretion, the power to modify it, or to dispense with its strict performance in the particular named.   This was done by the order of confirmation.''   See, also, *Jacob's Appeal*, 23 Pa. St. 477 ; *Thorn v. Ingram*, 25 Ark. 52.

The sale of the property seems to have been fairly made, at a place near to the land in controversy, at a time when a public sale had drawn together a large number of persons.   In fact, it appears that the place where the sale was held was much more favorable to the obtaining of a higher price than if the land had been sold at the door of the court-house in Topeka. The complaint that the property was purchased by the auctioneer, J. Q. A. Peyton, who was an agent of the administrator, is without merit.   The proof showed and that between the time of the sale and the execu-

that Hollenshade was the successful bidder at the sale, tion of the deed Peyton arranged with Hollenshade for the purchase of one-half the property, and for convenience a deed was made by the administrator to Hollenshade and Peyton.

While there were irregularities in the proceedings of the probate court and in the action of the administrator which might have been sufficient in a direct attack thereon to have justified a setting aside of the sale, yet we find no such vital defects therein as to deprive the probate court of jurisdiction, and the sale having been confirmed by that court and the deed issued, the proceedings must stand as against a collateral attack of this nature. The judgment of the district court will be affirmed.