64 P.(2d) 1294

**McCLOSKEY et al. v. SHORTLE.**
**No. 4200.**

Supreme Court of New Mexico.

Jan. 13, 1937.

Rehearing Denied Feb. 23, 1937.

See, also, 39 N.M. 273, 46 P.(2d) 50.

T. W. Gibson, of Albuquerque, for appellants.

John F. Simms, of Albuquerque, for appellee.

BRICE, Justice.

This direct action was brought by the appellants (plaintiffs below) against the appellee (defendant below) to cancel a special master's deed, whereby certain real estate was conveyed, in pursuance of a sale made in a foreclosure proceeding, upon the alleged ground that such deed is void. We will refer to the parties as plaintiffs and defendant, as in the district court.

The defendant demurred to the complaint upon the ground that it failed to state facts sufficient to constitute a cause of action in that it showed on its face that all questions raised had theretofore been litigated (or could have been litigated) in a suit between the same parties in the same court. The plaintiffs stood upon their complaint and judgment of dismissal was entered. The contention here is that the court erred in sustaining the demurrer. Facts alleged in the complaint sufficient to determine the case are as follows:

On March 5, 1934, George Savage, a special master, made, executed, and delivered to the defendant a special master's deed by the terms of which there was conveyed to her certain real estate situated in the city of Albuquerque, N. M.; sold under and by virtue of a decree of the district court of Bernalillo county, entered in cause No. 20884, in which the defendant and her trustee were plaintiffs and plaintiffs herein were defendants. The provision in the decree which ordered the sale of the real estate in question was as follows:

"said real estate and improvements are ordered sold according to law and the practice of this Court to satisfy the demands of the plaintiffs unless the defendants, or some one or more of them shall within 90 days from the date of the entry of this Decree pay off and fully satisfy the claim of the plaintiffs as herein adjudged, with interest and costs."

Notice of sale was duly published by the special master appointed by the court to make the sale; and among its provisions were the following:

"Notice is hereby given that the undersigned receiver and Special Master will * * * offer for sale and sell for cash to the highest and best bidder, subject to the approval of the Court. * * *

"Said sale will be made to satisfy a certain final decree made and entered in the above entitled Court and cause on the 21st day of October, 1933, wherein the Plaintiff, Alice M. Shortle, recovered a judgment against Defendants in the amount of Seventeen Thousand Five Hundred Dollars ($17,500.00), together with interest thereon at the rate of eight percent (8%) per annum from the 23rd day of August, 1933, until paid, and the additional sum of One Thousand Seven Hundred Fifty Dollars ($1,750.00) as attorney's fees, and Fourteen Dollars ($14.00) costs, which, on the day of said sale, will amount to the sum of Nineteen Thousand Nine Hundred. Eighty-three and 45-100 Dollars ($19,983.-45), to which shall be added the cost of publishing this notice and such fee for the receiver and special master, as the Court may allow, and upon which shall be credited any sum of money which the receiver may have on hand at the time out of the rents, issues, and profits of the property;

"Said sale will be made subject to the lien of the unpaid taxes, paving liens and the lien of the Middle Rio Grande Conservancy District."

The special master filed his report of sale, in which it was stated:

"That at the hour of ten o'clock a. m. on the 28th day of February, 1934, this receiver and special master attended at the south door of the Bernalillo County Courthouse and made public sale of the property mentioned and set forth in the decree and notice of sale, and the highest and best bid received was from Alice M. Shortle, Plaintiff, who offered the sum of her debt, interest, attorney's fees and costs, together with the cost of publishing the notice of the receiver and special master and such fee as the Court might allow the receiver and special master, on condition that the cash on hand in the amount of Four Hundred Eighty-Three and 51/100 Dollars ($483.51) should first be paid over to her on her debt, and that the receiver collect and pay her the One Hundred Eighty Dollars ($180.00) due from Jesse St. Claire McCloskey as rent aforesaid, and this receiver and special master sold and struck off to the said Alice M. Shortle said real estate and improvements thereon for such price, subject to the approval of the Court."

The sale so made was modified and, as modified, was confirmed by the district court; after which defendants filed a motion in that case to set aside the order confirming the sale. This motion was overruled by the court; "on condition, however, that the purchaser, Alice · M. Shortle, defendant herein, remit and waive collection of the amount of $180.00, which was alleged to be due to the Receiver from Jesse St. Claire McCloskey, which condition Alice M. Shortle, purchaser at said sale, complied with."

Thereafter the plaintiffs (defendants in that suit) appealed to this court from the order confirming the sale, which appeal was dismissed because not taken within the twenty days after the entry of such order, as required by the rules of this court.

The grounds of defendant's demurrer were as follows:

"Paragraph '(8)' of said complaint shows upon its face that all the matters alleged in this cause could have been alleged, and all the relief prayed for herein could have been prayed for, in a prior cause litigated before this Court and the Supreme Court of the State of New Mexico, and cannot now be made the subject of another suit against defendant for the reason that they are res adjudicata."

From the opinion of the district court, made part of the record, it would seem that these grounds of demurrer were not urged before the district court, and that by tacit consent the court determined the case upon the ground that the complaint did not contain allegations of facts sufficient to constitute a cause of action in that it appeared therefrom that the district court did not exceed its jurisdiction in confirming the special master's sale of real estate in question. This is the principal, and the decisive, question presented here.

The plaintiff presents it here as follows:

"The sale of the real estate involved herein by the special master as made in cause 20884 on March 5, 1934, was illegal and void. The district court exceeded its lawful jurisdiction, power, and authority in confirming that sale."

His proposition of law in support thereof is as follows:

"If a sale at foreclosure is conducted 'in a manner which would not have been in the power of the court in the first instance to have authorized,' that sale is void."

We take this as a correct statement of the law. Bechtel v. Wier, 152 Cal. 443, 93 P. 75, 15 L.R.A.(N.S.) 549; Freeman on Void Judicial Sales, § 44.

"It is sometimes said that a sale made under a decree must pursue the directions therein contained, that a departure from these directions renders the sale void. But to invoke this rule the departure must be of a very material character, and must, we think, be a departure which has not been approved by a decree of confirmation entered in the court which ordered and had supervision of the sale. In truth, a court is not absolutely bound by the terms of its order or decree respecting the mode of a sale. * * * If the court has power to direct the terms of the sale in the first instance it may change them afterwards, and if an officer or other agent of the law, or of the court in making a sale, departs from the directions of the decree, the court may, nevertheless, by confirming the sale, ratify his action, provided always that the terms so ratified are such as the court had power to impose in the first instance."

Freeman on Void Judicial Sales, pp. 88, 89, § 22.

This case, therefore, depends upon whether the district court had jurisdiction to have provided originally for a sale of the property upon the terms and in the manner in which the land was sold by the court.

The issue is clear-cut, but the authorities are in hopeless confusion; but by keeping in mind that only the lack of jurisdiction to enter a judgment renders it void, we have but little difficulty in arriving at what we believe to be a correct conclusion.

 By "power to sell" as used in the authorities cited by defendant, and referred to by us in this opinion, is meant "jurisdiction to sell." Sales may be made irregularly, erroneously, or fraudulently by a court having power to sell, and such sales are not void. See annotation in 1 A.L.R. beginning at page 1431. District courts in this state have the general jurisdiction of chancery courts to sell mortgaged lands in foreclosure suits, to satisfy mortgage debts; and unless such a sale is void under the terms (express or implied) of some statute, the power to sell on any terms, or in any manner, rests in the sound discretion of the court subject to correction for abuse or cancellation upon equitable grounds by direct action for such purpose. It is an abuse of discretion to sell in a manner, or upon terms clearly against the best interest of the parties; or in violation of a positive statute, such as the requirement that, notice of sale be published prior thereto, or that it be for cash. But such statutes are not limitations on the power to sell, unless they provide (either expressly or by necessary implication) that sales made in violation thereof are void. This question has been before the courts in a number of cases to which we will refer. We have two statutes material to this discussion, as follows:

"That no lands, tenements, goods or chattels shall be sold by virtue of any execution or other process, including chattel or real estate mortgages, unless such sale be at public vendue, between the hours of nine in the morning and the setting of the sun of the same day, nor unless the time and place of holding such sale and full description of property to be sold shall have previously been published for four weeks preceding said sale in English or Spanish, as the officer conducting said sale in his judgment may deem will give the most extensive notice in the county in which said property is situate, or, if there be no newspaper printed in said county, then in the newspaper chosen as the official paper for said county, and also by posting six such notices printed or written or partly printed or written in six of the most public places in said county." Section 46-106, N.M.Sts. 1929.

"If any sheriff or other person shall sell any lands, tenements, goods or chattels by virtue of any process otherwise than in the manner aforesaid or without such previous notice, the sheriff or other person so offending shall for every offense, forfeit

and pay the sum of fifty dollars with costs of suit in any district court in this territory, to be recovered by the person whose lands are sold." Section 46-107, N.M.Sts. 1929.

Clearly it was intended that all such sales should be made after publication of notice; and it is equally clear that it was not intended that such sales not so advertised should be invalid. There is no provision in either section indicating that a noncompliance therewith would invalidate a judicial sale; but the latter clearly implies that the effect of such noncompliance is only to render the officer making said sale liable to the mortgagor in liquidated damages.

█ Such sales are irregular and should not be confirmed; but the mortgagor, whose interest it is to secure the highest bid, may waive publication of notice, or even a public sale, by failure to object until after the trial court has lost jurisdiction to set aside its order confirming such irregular sale.

The exact question was decided by the Supreme Court of California. The statutes of that state provided sales under execution should be advertised or posted twenty days before the date of sale. In determining whether a sale not made in conformity therewith was void, the Supreme Court, in Smith v. Randall, 6 Cal. 47, 65 Am.Dec. 475, said:

"Very few of those who become purchasers of land at sheriff's sales, have an opportunity of knowing whether or not the law, with respect to notice, has been strictly complied with, or whether the defendants in execution have personal property at the time of the levy, and if every mistake or neglect of duty, on the part of a sheriff, would operate to invalidate such sale, great injury would result, both to debtor and creditor, for no prudent man would give a fair price for property, if he was liable to be divested of his title by reason of the laches of the officer. Is there any thing in our statutes in conflict with the view above taken?

"The intention of the Legislature, where it can be ascertained, must govern in the construction of a statute. This intention should not be taken from a particular section, but from the whole statute. Section 221 of the 'Act to regulate proceedings in civil cases,' provides that the sheriff shall, before a sale of real estate under execution, give notice of the time and place of sale, for twenty days. If the officer neglects to give such notice the following section provides, not that the sale shall be void, but 'an officer selling without the required notice shall forfeit five hundred dollars to the aggrieved party in addition to his actual damages.' Section 222.

"The statute having thus provided an adequate remedy, by an action against the officer, the party aggrieved can have no other expressio unius exclusio est alterius."

Also see Shores et al. v. Scott River Water Co., 17 Cal. 626.

In Blanks v. Farmers', etc., Co. (C.C.A.) 122 F. 849, 852, the question was whether a judicial sale made of real estate in a mortgage foreclosure proceeding was void. Notice of sale was duly published, as required by Act of Congress, but the highest bid was unsatisfactory. The court announced it would be set aside unless the purchaser would increase the amount of his bid some $2,000. The court opened bids in his courtroom and the purchaser increased his bid to the required amount. On appeal from the order of confirmation, the court stated:

"Every one has had a full opportunity to bid on the property, and the question is not whether the judge could originally have sold the property at chambers and without advertisement, but whether, after the property has been duly advertised and offered for sale, the action of the judge, resulting in the purchaser's increasing the price very largely, should be upset at the instance of the appellants, who were the prime movers in the matter, and participants in the latter bidding. It is clear that if the appellants had succeeded in buying the property they would not be here complaining. Can they be heard to complain because others bought it? We are clearly of opinion that, under the circumstances of this matter, the action of the lower judge should be allowed to stand. That action has resulted beneficially to all parties in interest, including the appellants. The final price obtained exceeds largely the upset price fixed by the court."

But if the court had no power to sell at a private sale, these proceedings, including the order of confirmation, were void.

The same question was decided in Bovay v. Townsend (C.C.A.) 78 F.(2d) 343, 347, 105 A.L.R. 359. Two bridges were sold at public vendue after publication of notice of sale, as the Act of Congress requires. The district judge required as a condition of approving the sale that the successful bidder should double his bid; which was done, and the sale confirmed. On appeal the majority held this to be error, Judge Sanborn dissenting. The question of the validity of the sale was not before the court; though the court in referring to Investment Registry, Ltd., v. Chicago, etc., Ry. Co. (C.C.A.) 212 F. 594, said:

"It therefore may well be that, while full compliance with sections 847 and 849 supra [28 U.S.C.A.], may somtimes be excused by reason of waiver and estoppel on the part of all persons interested and objecting to confirmation, those statutes yet must be observed, as a general rule of conduct."

If the court had no jurisdiction to make or confirm such sale, then neither waiver nor estoppel could supply it. No doubt the statute should be followed, but it was not held to be a matter of jurisdiction.

The Circuit Court of Appeals for the Fourth Circuit, in Cumberland Lumber Co. v. Tunis Lumber Co., 171 F. 352, held that a sale made without advertisement was void. It reaches its conclusion from

the wording of the statute which would not apply here.

See, also, Park v. Conley (C.C.A.) 202 F. 415; State Nat. Bank et al. v. Neel, 53 Ark. 110, 13 S.W. 700, 22 Am.St.Rep. 185; Caudle et al. v. Luttrell, 183 Ky. 551, 209 S.W. 497; Miners' Bank v. Acker (C.C.A.) 66 F.(2d) 850; Noland et al. v. Barrett et al., 122 Mo. 181, 26 S.W. 692, 43 Am.St.Rep. 572; Gordon State Bank v. Hinchley et al., 117 Neb. 211, 220 N.W. 243; Cannon v. Hewitt, 22 Idaho 328, 125 P. 799, 43 L.R.A.(N.S.) 671; Woodhull v. Little et al., 102 N.Y. 165, 6 N.E. 266; Koontz v. Northern Bank, etc., 16 Wall. 196, 21 L.Ed. 465; Abbott v. Curran et al., 98 N.Y. 665; Thompson v. Burge, 60 Kan. 549, 57 P. 110, 72 Am.St.Rep. 369; Freeman on Executions (3d Ed.) § 286.

■ The court had the power to modify the terms of the bid and approve the sale as modified, or disapprove it altogether and make a new sale on his own terms, however irregular, erroneous, or fraudulent it might be.

As we understand plaintiffs' contention, it is that the sale is void because defendant's bid at the public sale was conditional on the collection and payment on the judgment debt, of $180 alleged to be due the receiver "on an unsettled account for rent, which could not satisfy or partially satisfy the judgment if the sale had been made to any other person than the mortgagee." That also the bid depended upon paying to the mortgagee a sum of more than $400 cash, which the bidder claimed was in the hands of the receiver as *rents collected from the property*; because "there was no certainty that such cash was in the hands of the receiver or would be after the sale. That the court could not have made such conditions in its order of sale, originally," for the reasons stated; and further "because such conditions would discourage competitive bidding and any order of sale on such terms is in 'excess of the jurisdiction' of the court."

■ The argument of plaintiffs presupposes that such sales must have been advertised and the property sold at public auction. The law so provides and a sale made otherwise, except possibly under special circumstances, is irregular and erroneous, but not void.

It appears from the record that a receiver was appointed by the court to have charge of the property and collect rents pending foreclosure. We must assume that the placing of such property in the hands of a receiver was a valid exercise of the powers of the court for preservation of the property and the application of rents to defendant's debt. We will further assume that the sum of $483.51 cash in the hands of the receiver and the $180 due the receiver were subject to the order of the court for application to defendant's debt. If the defendant's bid had been $663.51 less than the debt, the court was authorized to pay this out of cash on hand or debts due the receivership for unpaid rents. Such

are the purposes of receivership proceedings in foreclosure cases.

"The object of obtaining the appointment of a receiver is generally to gain a priority of lien on the rents and profits of the premises, so that the court will have the power of directing their application to the payment of the plaintiff's claim; a receiver cannot properly be appointed where the court does not have such power. The immediate and actual cause for the appointment of a receiver in a foreclosure, is to secure the rents and profits of the mortgaged premises in advance of the final judgment, in order that they may be applied towards any deficiency that may exist between the amount of the incumbrances and the amount for which the property may sell under the foreclosure." Wiltsie on Mortgage Foreclosures, p. 1115, § 760.

The court in its decree or order could have provided originally that. the funds on hand and rents thereafter to be collected should be paid on the mortgage debt, and the land sold and proceeds of sale used to satisfy the balance, together with costs, expenses, attorney's fees, etc.; and this was the effect of the sale. It is not claimed that plaintiff was injured, or that any one refused to bid.by reason of the terms of the sale. The amount of the. bid was in reality a sum equal to the amount of the debt, costs, etc., less the two amounts mentioned in the master's report to the court. This could have been easily computed by any interested person.

The sale made by the court could have been provided for in the original order. It was indefinite as to certain items, particularly the receiver's fees, and costs of court, but these are not jurisdictional defects, even if irregular.

In Olcott et al. v. Headrick, 141 U.S. 543, 12 S.Ct. 81, 82, 35 L.Ed. 851, a much more indefinite order of sale was approved. An order was entered by the trial court, providing that the purchaser at a sale of real estate decreed to be sold in a mortgage foreclosure, and as part of the consideration of the purchase (in addition to his cash bid) would pay and satisfy any and all claims then pending against the receiver, which might be thereafter allowed by the court. In holding that a claim of $500 should be paid by the purchaser, the Supreme Court stated:

"Although the decree of sale provided that all claims, debts, and demands accruing during the receivership should be barred unless presented within six months after the confirmation of the sale, yet the decree of confirmation provided that the purchasers should take the property, and that the .deed should recite that they took it, subject to all debts, claims, and demands, of whatsoever nature, incurred by the receiver, and which might remain unpaid at the termination of his receivership. It does not appear that the purchasers objected to the terms of the decree of confirmation, or appealed to this court

from that decree. They might have done both, on the ground that the decree of confirmation varied from the terms of the decree of sale under which they had bought, in destroying the six-months limitation."

The terms of the sale in the Olcott Case were much more indefinite than the one under consideration, and while no question regarding its validity was presented in that case, its terms were not criticized as irregular.

 While it is the duty of a court of equity in foreclosure suits to sell the mortgaged property in a manner and upon terms (ordinarily for cash) that will be to the best interest of the parties, and particularly in accordance with the statute requiring sales to be at public auctions, yet sales made otherwise are not void for lack of jurisdiction to make them. The remedy of plaintiffs was by appeal or writ of error. Federal Title, etc., Co. v. Lowenstein, 113 N.J.Eq. 200, 166 A. 538, and annotations in 73 A.L.R. beginning at page 612.

We find it unnecessary to pass on the question of res adjudicata raised by defendant's demurrer as filed.

The decree of the district court will be affirmed.

It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.