(12 App. Div. 227.)

## CORNWELL v. BALDWIN'S BANK OF PENN YAN.

(Supreme Court, Appellate Division, Fourth Department.   December 16, 1896.)

1. PLEDGES—WHAT CONSTITUTES—BOOK ACCOUNTS.
    A book account is not pledged by the delivery of a copy of the account as security, without an assignment, since such a copy does not represent the debt.

2. ASSIGNMENTS FOR BENEFIT OF CREDITORS—RIGHTS OF ASSIGNEE.
    One who has transferred his book accounts to a creditor as security, and is authorized to collect them for the transferee's benefit, is not the agent of the transferee, so as to charge him with collections appropriated by the transferror to his own use, as between the transferee and the transferror's assignee for the benefit of creditors.

Appeal from special term, Yates county.

Action by George R. Cornwell, as assignee for the benefit of creditors of Edson Potter and others, constituting the firm of Potter, Kinne & Kendall, against Baldwin's Bank of Penn Yan, to set aside a transfer by plaintiff's assignors to defendant of their accounts, on the ground that the debt to secure which the transfer was made is paid, and that the transfer was in fraud of creditors. From a judgment entered on a decision of the trial judge setting aside the transfer in part, both parties appeal. Affirmed.

The opinion of Mr. Justice BRADLEY at special term is as follows:

On the 4th of December, 1895, the members composing the firm of Potter, Kinne & Kendall, and as such, made to the plaintiff a general assignment for the benefit

of their creditors. At that time, the assignors were insolvent. Their liabilities then amounted to $133,315.33, and, while the nominal amount of their assets was $113,389.22, the estimated actual value of them was $98,126.40. On the 24th day of July, 1895, they owed the defendant $16,625, represented by their notes. The plaintiff's assignors then made and delivered to the defendant a transfer of accounts, as per schedule thereto annexed, of the nominal amount of $20,391.07, as collateral security for the payment of such notes and any renewals thereof. This instrument of transfer contained the provision that: "It is understood that the first parties are to act for such bank in collecting said accounts until such time as the authority hereby given shall be countermanded, and said parties of the first part hereby severally agree to pay upon the above indebtedness, through the collection of the accounts or otherwise, $1,000.00 upon the 10th day of each and every month hereafter, until said indebtedness, said notes, and all renewals thereof, have been fully paid." It also provided that the amount of the accounts which the bank should hold by assignment from the firm as collateral security should continually, until payment of the indebtedness, bear to it the same proportion given by the transfer first above mentioned, and that, in order to carry into effect such understanding, the assignors agreed that they would on the 10th day of each month, until such indebtedness was paid, make an assignment to the defendant of such new accounts as should accrue against persons making purchases of them, "so as to maintain and keep good the proportion aforesaid between the indebtedness and collateral security." They also agreed to present to the defendant on the 10th day of each month a written statement of such of the accounts assigned as had been paid. They did deliver to the defendant monthly statements or schedules of accounts, but made no assignment to it subsequent to that of the 24th of July, 1895. The provisions before mentioned indicate that it may have been contemplated that all the moneys collected by the assignors upon the accounts so assigned might not be paid over to the defendant, else the provision for subsequent transfers to continue the proportional relation between the indebtedness and security would seem to have no substantial significance. It is therefore urged on the part of the plaintiff that there was an understanding between the parties to that instrument that the assignors might appropriate the proceeds of those accounts, or some part thereof, to their own use. But there is no agreement or permission to that effect expressed in the instrument, and none will be inferred unless fairly required by the evidence. Brackett v. Harvey, 91 N. Y. 214. And it may be observed that the agency of the assignors to make collections for the defendant relates to the entire accounts assigned, up to the amount of their indebtedness to it. In that view, it is not essential to the validity of the instrument of transfer that they pay over to the defendant the full amount collected. By the terms of the instrument, no transfer of the monthly accounts to the defendant was expressed, but it seems to have been contemplated that the assignment of them would subsequently be made.

The maxim in equity that what is agreed and ought to be done is deemed performed is available only when good conscience requires its application. Whatever view might be taken of it if no rights other than those of the assignors were involved, the interests of other creditors adverse to those of the defendant are not to be overlooked. The provision for the subsequent assignment of accounts does not seem to have been made to supply any deficiency in the amount of those included in the assignment of July 24th, but to preserve the relative proportion of the security furnished by it to the debt owing to the bank. The apparent reason for this was in the apprehension that the assignors, by virtue of the permission given them to collect the assigned accounts, might appropriate some of the proceeds to their own use. This, certainly, as against the other creditors, cannot be deemed conscionable, just, or allowable. It appears that the larger portion of the debts which the assignors owed other creditors at the time that the assignment to the plaintiff was made existed at the time of such transfer to the defendant, in July, 1895. The view here taken is that the monthly statements of accounts cannot be deemed to have been assigned to the defendant, and that they did not become available to it as security for the payment of the indebtedness of the firm to the bank. The delivery of the schedules of accounts on the books of the assignors constituted no "pledge," in the legal sense of the term. A pledge is a bailment of personal property as security. The entries of account in a book kept by the creditors purport to charge the

debtors with the amount. The property, in such case, is only in the liability of the persons who are debited in the account. In the present case the books containing the original entries were retained in the possession of the firm. When the debtor has furnished evidence of his liability by note, or by his acceptance of a bill, or in any other legitimate manner, the chose in action may be the subject of bailment and pledge, as may also be a certificate of stock. The requisite quality of personal property to become a pledge by delivery does not exist in a mere copy of an account, taken from the books of the person to whom it ac-- crued, against another.

After the assignment of July 24th was made to the defendant, and prior to December 4, 1895, the assignors collected of the accounts so assigned $11,973.21, of which they paid over to the defendant $3,985. Since the assignment to the plaintiff, he has collected of those accounts $789.90, and the defendant has received on the accounts the further sum of $38.27. The amount collected and. received by the assignors of those accounts assigned to the defendant in excess of the sum paid by them over to it is $7,988.21. The question therefore arises whether or not, as against the plaintiff, the defendant is chargeable with the moneys so collected and retained by the assignors. This would be the consequence as against their judgment and execution creditors, as, by reason of the agency created by the provision in the instrument of transfer, the assignors.. represented the bank in making the collections, and the amount collected by them would be applicable pro tanto to the payment of the debts. Conkling v. Shelley, 28 N. Y. 360; Brackett v. Harvey, 91 N. Y. 214, 221; Ellsworth v. Phelps, 30 Hun, 646; Sperry v. Baldwin, 46 Hun, 120. The right of action to· set aside a transfer made in fraud of creditors by a debtor who thereafter makes· an assignment for the benefit of his creditors is in the assignee. Laws 1858, c. 314; Loos v. Wilkinson, 110 N. Y. 195, 18 N. E. 99. That is not this case. It is within the purpose for which the present action is brought, to obtain the possession and control of the assets to which the assignee alleges he is entitled by· virtue of the assignment for the benefit of the creditors of the assignors, and to enjoin the defendant from collecting the accounts which are alleged to have been assigned to the plaintiff. The purpose of the action in that respect is legitimate. As between the assignors and the defendant, the collections made upon the accounts assigned to the latter did not, to the extent that the money so collected was retained by them, operate as payment on their indebtedness to· the defendant. As between such original parties to the assignment to the bank, both the debt and the security remained, except so far as the money was paid over to, or received by, the defendant. Brackett v. Harvey, supra. The as-· signee of a voluntary assignment for the benefit of the creditors of the assignor,. except so far as he is authorized, takes only such powers in respect to the sub-- ject of the assignment as the assignor has and can confer upon him, and the· equities existing against the assignor remain effectual against the assignee. He· has not the character of a bona fide purchaser. Reed v. Sands, 37 Barb. 185; Slade v. Van Vechten, 11 Paige, 21; Van Heusen v. Radcliff, 17 N. Y. 580, 582. By the statute before referred to, the assignee is vested with the right of action to attack a transfer of property made by his assignor before the assignment in fraud of creditors. A statutory provision to enable the assignee, in the execution of a trust, to pursue by action any remedy by which the creditor, as such, represented by him, can lawfully seek equitable relief, may be wise, as well as convenient. The permission to the assignors, expressed in the instrument of transfer, to collect the accounts included in it, was relieved from the imputation of fraud, as against creditors, by the fact that, as they were to make the collections only for the defendant, the creditors can insist that the collections: which they did make were made in the execution of such agency; and in that may be seen support for an action for judicial direction that the amount so. collected by them be applied in satisfaction, pro tanto, of the indebtedness to. secure which the transfer was made. As the plaintiff is unable to seek such relief, that subject requires no further consideration in the present case.

By the conclusion here reached, both parties have partially failed and partially succeeded in their contentions. The plaintiff is entitled to the relief that the defendant be enjoined from collecting or receiving payment of any of the accounts in question, other than those included in the assignment to it of date July 24, 1895. The defendant is entitled to the benefit of the assignment.

to it of that date, for the purpose of collecting the accounts assigned by that instrument, in amount not exceeding that remaining unpaid of the indebtedness which that assignment was made to secure. And, subject only to that right of the defendant, the plaintiff, by the assignment to him, took title to the accounts in question. And the defendant is entitled to the amount collected by the plaintiff as aforesaid upon the accounts assigned to the defendant. Judgment is directed accordingly, with costs to both parties payable out of the estate assigned to the plaintiff.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

Huson & Dwelle and E. G. Herrendeen, for plaintiff.
M. A. Leary, for defendant.

PER CURIAM. Judgment affirmed, with costs, on the opinion of BRADLEY, J., delivered at special term.