## Westinghouse *v.* German National Bank.

*Bailment—Pledge of stock—Broker—Notice of ownership.*

When on the face of a certificate of stock absolute ownership appears in him who is in possession of it, and there is no evidence outside, showing actual or constructive notice that the ownership is in another, the party taking such certificate for value takes title thereto. Where loss results, the owner who puts it in the power of another to deal with the instrument as his own must bear the loss.

Where an owner of stock executes upon the back of the certificate an absolute power to sell or transfer, and delivers the certificate to a broker as collateral security to protect the broker in carrying other stock, and subsequently the broker surrenders the certificate and has issued to himself a new certificate in his own name, and thereafter pledges the new certificate with a person who has no knowledge of the real ownership, the pledgee can retain the stock as against the true owner. Westinghouse v. German National Bank, 188 Pa. 630, distinguished.

Argued Nov. 1, 1898. Reargued Feb. 27, 1900. Appeal, No. 48, Oct. T., 1898, by Joseph W. Craig, from decree of C. P. No. 2, Allegheny County, July T., 1897, No. 828, on bill in equity in case of George Westinghouse v. The German National Bank of Pittsburg and Joseph W. Craig. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Bill in equity to compel surrender of certificate of stock.

The facts are fully stated in the opinion of the Supreme Court.

The court below entered a decree that the 500 shares of stock mentioned in the bill were the property of George Westinghouse and ordered that the same should be delivered to him.

*Error assigned* was the decree of the court.

*Edwin S. Craig*, for appellant.—The bank did not know of Westinghouse's ownership, and the bank was justified in making the loan upon the faith of the certificates and thereby became a pledgee of them, for value, with the rights of a bona fide purchaser thereof: Wood's App., 92 Pa. 379; Dovey's App., 97 Pa. 153; Miller v. Pollock, 99 Pa. 202; Penna. R.

Co.'s App., 86 Pa. 80; Souder v. Columbia Nat. Bank, 156 Pa. 374; Burton's App., 93 Pa. 214; Gilbert v. Erie Bldg. Assn., 184 Pa. 554; McManus v. Laughlin, 186 Pa. 498.

Craig, even when only a guarantor, had parted with something of value to him, and had acquired an interest in the fuel gas stock, just the same as an innocent purchaser or pledgee for value, and with exactly the same rights: Dovey's App., 97 Pa. 153; Miller v. Pollock, 99 Pa. 202; Jones on Pledges. (1st ed.), sec. 127; Bispham's Eq. (5th ed.) secs. 335, 337; Forest Oil Co.'s App., 118 Pa. 145; Kerns v. Swope, 2 Watts, 75; Jaques v. Weeks, 7 Watts, 261; Meals v. Brandon, 16 Pa. 220; Mulliken v. Graham, 72 Pa. 484.

Where one of two parties must suffer from the wrongful act of a third person, the party who clothes that third person with power to perpetrate the wrong must suffer rather than the innocent party who is deceived and imposed upon: Penna. R. Co.'s App., 86 Pa. 80; Garrard v. Haddan, 67 Pa. 82; Burton's App., 93 Pa. 214.

Craig having paid the debt for which the fuel gas stock was pledged is the lawful holder of that stock apart from the form of the note or notes which represent the debt: Jones v. N. Y. Guaranty, etc., Co., 101 U. S. 622; Shrewsbury Savings Institution's App., 94 Pa. 309; Read v. Doak, 22 U. S. Appeals, 669; Spencer v. Clarke, L. R. 9 Ch. Div. 137; Rice v. Rice, 2 Drewry, 73; Bispham's Eq. (5th ed.) sec. 40; Basset v. Nosworthy, 2 Leading Cases in Equity (White & Tudor), 1.

*George B. Gordon,* with him *John Dalzell* and *William Scott,* for appellee.—On the undisputed testimony in this case, the Pittsburg Meter Company stock was pledged by Westinghouse with A. J. Lawrence & Company, as further collateral for moneys due. Clearly therefore Lawrence had no right to rehypothecate the stocks: Act of May 25, 1878, P. L. 155; Cook on Stockholders, sec. 471.

A subpledgee in order to hold the pledge discharged of the equities, must have advanced money upon the faith of the apparent ownership of the stocks by the original pledgee and not only without express notice of the fact that the person pledging to him is not the owner, but without being aware of any such circumstances as would suggest inquiry and the burden

is upon him to prove affirmatively all the facts necessary to establish his right to hold the stock: Ashton's App., 73 Pa. 162; Petrie v. Clark, 11 S. & R. 388; Depeau v. Waddington, 6 Wharton, 220; Altoona Second Nat. Bank v. Dunn, 151 Pa. 232; Royer v. Keystone Nat. Bank, 83 Pa. 248; Kirkpatrick v. Muirhead, 16 Pa. 117; Ryman v. Gerlach, 153 Pa. 197; Leiper's App., 108 Pa. 377; Colonial Bank v. Cady, L. R. 15 Appeal Cases, 267; Fisher v. Brown, 104 Mass. 259; Williamson v. Brown, 15 N. Y. 354; Denny v. Lyon, 38 Pa. 98; Wood's App., 92 Pa. 390; Souder v. Columbia Nat. Bank, 156 Pa. 374; Merchants' Nat. Bank v. Livingston, 74 N. Y. 223; Gould v. Farmers' Loan and Trust Co., 23 Hun, 322; Jones on Pledges, 512; Cook on Stocks and Stockholders, sec. 473; Myers v. Merchants' Nat. Bank, 27 Abb. New Cases, 266; Gould v. Cent. Trust Co., 6 Abb. New Cases, 381.

OPINION BY MR. JUSTICE DEAN, May 21, 1900:

On December 10, 1890, George Westinghouse, the plaintiff, delivered to Sproul & Lawrence, bankers and brokers, doing business in Pittsburg, certificates for 500 shares of the capital stock of the Fuel Gas Company of the par value of $100 each; the stock was delivered to the brokers as collateral, for the protection of Westinghouse's account with the brokers, who largely purchased, carried and sold different stocks for him. On each certificate was the usual absolute transfer and written sale of the stock, with an irrevocable power of attorney authorizing the brokers to have the shares transferred to themselves on the books of the corporation and to have issued to themselves new certificates in their name; in about a month thereafter, they were transferred to the brokers, the old certificates being surrendered and new ones issued to them; then they pledged the new securities with the German National Bank as collateral for the payment of their demand note of $15,000. Before this loan, the brokers had borrowed from the same bank $10,000 on two other notes, making their indebtedness $25,000 altogether; for these last loans, they had pledged other securities as collateral.

Westinghouse sometime in August, 1894, and several times afterwards, offered to pay to the brokers any balance due from him to them, on a redelivery of the Fuel Gas Company stock

and other stock pledged by him; they always replied, in substance, that the stocks were not in their possession but had been repledged, and if given time they would get them. Lawrence at this time had become embarrassed financially, and afterwards assigned for the benefit of his creditors. Sproul withdrew from the firm in 1891, leaving Lawrence as successor in the business. The bank became importunate for repayment of its loans; Lawrence solicited financial aid from Craig, this appellant; he communicated with the bank, and learned that the brokers had repledged to the same bank 200 shares of stock of the "Craig Oil Company," which he had previously delivered to them for a special purpose. He was anxious to save his own stock, and it was agreed between him, the bank and Lawrence, the broker, that the latter should give to the bank two other notes, one in sum of $10,000, the other for $15,000; for the first, Lawrence was to pledge as collateral 300 shares of Westinghouse Machine Company; for the second, he was to pledge the Craig Oil Company stock and the 500 shares of Fuel Gas Company stock, and small blocks of other stocks; in addition, Craig was to guarantee payment in writing on the back of the note, which he did, the bank stipulating orally that it would be indulgent to Craig in exacting payment. Lawrence afterwards made payment to the amount of $5,000 to the bank, and received a small number of shares of other stocks because of the payment, but no part of the Oil Company or Fuel Gas Company stock. A large balance of the guaranteed note remaining unpaid, demand was made for payment on the guarantor, Craig; he paid over $10,000, the balance due to the bank, by reason of his liability for Lawrence, and leaving still due from Lawrence to him, over $11,000. The bank, having accepted Craig as its debtor, and received his money, turned over the note and stock pledged to him; the first notice he received that Westinghouse claimed the stock, was on October 26, 1896, more than a year after he had guaranteed the debt of Lawrence, and a considerable time after he had made large payments and the stock had been delivered to him. Nearly a year afterwards, with notice to Westinghouse, he advertised the stock for public sale; immediately Westinghouse filed this bill, averring his ownership; that the brokers had no authority to pledge the stock to the bank and that the bank had no title

thereto, which would warrant it in parting with the possession to Craig. The answers of the bank and Craig deny any knowledge of ownership or claim by Westinghouse of the stock at the date of the pledge, guarantee or payment by Craig.

The case was fully heard by the court below, and decree made, that the title to the stock was in Westinghouse, and that Craig should surrender it to him. From this decree we have this appeal.

In the case of Westinghouse v. Bank, 188 Pa. 630, a case like this in some of its facts, and argued the same week, a similar decree was affirmed. There was some difference of opinion at that time among the members of the court, as to whether the principles announced in that case were applicable in this one, and therefore, on account of the large business interest likely to be affected, we ordered this reargument. After careful consideration we all now concur in the opinion that there should be a reversal.

The decree of the court below here is based solely on the ground that appellant is not a bona fide holder for value, because neither he nor the bank made inquiry as to whether Lawrence had a right to pledge the stocks. It will be noticed that the brokers as authorized by the power of attorney on the back of the certificates, very soon after they came into their possession, surrendered them to the company, and took new certificates in their own names. When they offered them to the bank as collateral, there was not on their face, anything to suggest that Sproul & Lawrence were not the absolute owners; the bank accepted them as collateral, handing their money over to the brokers on the faith of them; then they turned them over to Craig when he paid his money in accordance with his obligation. There is not a word of evidence dehors the certificate, indicating to the bank or Craig, knowledge of claim by another. No penalty for neglect of inquiry can be imposed, unless under the facts inquiry was a duty. But of whom would the bank or Craig inquire? The company, on the face of the certificates, had in effect said " Sproul & Lawrence have paid for and are the owners of 500 shares of our stock, and we so certify; " when they pledged them to the bank, they in effect declared, "these certificates are ours; we have paid for them to the fuel company, and want to borrow

money on them." Surely the bank was not bound to suspect falsehood in both the fuel company and the brokers, and make fruitless inquiry of all the business men in Pittsburg whether the brokers owned the stocks, for under the circumstances any other business man might as well have been the owner as Westinghouse, if the brokers were not the owners. If any one was in fault as concerns the bank and Craig it was the original owner, who by express writing declared he had absolutely sold and transferred the certificates to Sproul & Lawrence, with the right in the brokers to have them reissued in their own names. The case of Westinghouse v. Bank, supra, is distinctly different in its facts. The knowledge that the stock belonged to the plaintiff was affirmatively proved in that case. The decision in Ryman v. Gerlach, 153 Pa. 197, also cited by appellant, was put upon the same ground, to wit: that the broker in Philadelphia knew or ought to have known that his own correspondent was selling stocks for customers and not for himself.

We hold that when on the face of the certificate absolute ownership appears in him who is in possession of it, and there is no evidence outside, showing actual or constructive notice, that the ownership is in another, the party taking such certificate for value takes title thereto. Where loss results, the owner who puts it in the power of another to deal with the instrument as his own, must bear the loss.

The decree of the court below is reversed at costs of appellee.