# American Exchange National Bank of New York, Appellant, v. Federal National Bank of Pittsburg.

*Bailment—Pledge—Pledge of book accounts—Assignment—Delivery.*

1. Incorporeal property being incapable of manual delivery, cannot be pledged without a written transfer of the title. Debts, negotiable instruments, stocks in incorporated companies and choses in actions generally, are pledged in that mode. Such transfer of the title performs the same office that delivery of possession does in case of the pledge of corporeal property. The transfer of the title, like delivery of possession, constitutes the evidence of the pledgee's right to the property in the thing pledged.

2. The pledge of a book account is not completed by the delivery of a copy of the account. There must be an actual assignment of the account in writing in order to perfect the pledge.

3. Where a creditor delivers a copy of an account receivable to a bank as a pledge, but without any written assignment of the account, and the debtor by whom the account is owing is not notified of the pledge, and thereafter the owner of the account collects the same through another bank with which the owner had an agreement that all moneys passing through its hands might be applied to the discharge of the indebtedness of the owner of the account, the latter bank may, if it has had no notice of the prior pledge of the account, retain the money collected on it, and is not obliged to surrender such money to the other bank with which the account had been pledged.

Argued Oct. 28, 1909. Appeal, No. 161, Oct. T., 1909, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., June T., 1904, No. 936, for defendant on case tried by the court without a jury in suit of American Exchange National Bank of New York v. Federal National Bank of Pittsburg. Before FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Assumpsit to determine the ownership of the proceeds of certain book accounts.

The case was tried by MACFARLANE, J., without a jury under the Act of April 22, 1874, P. L. 109.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in entering judgment for plaintiff for $4,687.49, with interest from May 23, 1903.

*B. J. Jarrett*, with him *Willis F. McCook* and *Karl F. Overholt*, for appellant.—We take the position that the plaintiff bank as such pledgee of these accounts had a special property and greater rights therein than the defendant bank, which the court finds was a mere creditor, and not a purchaser for value: Camden Nat. Bank v. Fries-Breslin Co., 214 Pa. 395; Lishy v. O'Brien, 4 Watts, 141; Fidelity & Deposit Co., of Md. v. Johnson, 42 So. Repr. 357; Lyle v. Barker, 5 Binney, 457; Munn v. McDonald, 10 Watts, 270; Smith v. Trust Co. 215 Pa. 416; Northwestern Bank v. Poynter & Co., L. R. App. Cases (1895), 56; Holmes v. Langston, 110 Ga. 861 (36 S. E. Repr. 251); Jarecki Mfg. Co. v. Hart Co., 5 Pa. Superior Ct. 422; First Nat. Bank of Clarion v. Cregg & Co., 79 Pa. 384; Hackett v. Reynolds, Lamberton & Co., 114 Pa. 328; Davis v. National Bank, 26 So. Repr. 222; Douglas v. Bank, 17 Minn. 35; Kellogg v. Thompson, 142 Mass. 76 (6 N. E. Repr. 860).

*David E. Mitchell* and *Wm. A. Stone*, with them *Stephen Stone* and *William A. Griffith*, for appellee.—Since the decision of this court in the case of Phillips's Estate, 205 Pa. 515, it must be considered settled law that an assignment of a chose in ac-

tion is not complete until notice of the same has been given to the trustee, stakeholder or debtor.

But assuming for the purposes of this argument that the decision in Phillips's estate had never been handed down, we maintain that the prior decisions have ruled this case absolutely: Levy v. Cooke, 143 Pa. 607; Bughman v. Central Bank, 159 Pa. 94; Geist's App., 104 Pa. 351; Quail's App., 92 Pa. 196; Com. v. Sides, 176 Pa. 616; First Nat. Bank v. Gish, 72 Pa. 13.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1910:

This case was tried before the court without a jury under the Act of April 22, 1874, P. L. 109. The material and controlling facts are the following: The action was brought May 23, 1904, to recover $4,687.49, with interest from May 23, 1903, being part of the proceeds of a draft drawn by the Eastern Tube Company to the order of the defendant bank on the Spokane Falls Gas Light Company for the sum of $6,544.42.

In December, 1901, the Eastern Tube Company made a parol contract with the defendant bank by which it was agreed that the company would keep twenty-five per cent of the proceeds of discounts made for it by the bank on deposit as security to the bank, the said proceeds and the tube company's money on deposit to be security for the tube company's indebtedness to the bank. The tube company's balance was to be used as though it were collateral put up with the bank for its security, and to be applied in any case that the bank could have applied collateral security, whether the indebtedness was or was not due. Under this agreement the defendant bank discounted paper for the tube company, some of which was renewed from time to time.

On January 19, 1903, the tube company made its note in the sum of $25,000 payable in four months to the plaintiff bank, and (as the note recites) deposited with the bank as collateral security "for the payment of this or any other liability or liabilities of ours to said bank, due or to become due, or that may have been heretofore or may be hereafter contracted," certain warehouse receipts, with the further provision that

"on the nonpayment of any liability or liabilities above mentioned the said bank . . . . is hereby given full power and authority to sell, assign and deliver or collect the whole or any part of the above named securities or any substitute therefor, or any addition thereto, . . . . without demand or notice . . . . and may become the purchaser of the whole or any part of such securities discharged from any right of redemption." The note was discounted by the plaintiff and the proceeds paid to the tube company. On March 26, 1903, at the request of the tube company, certain accounts receivable, inter alia, four accounts against the Spokane Falls Gas Light Company, were submitted for one of the warehouse receipts held as collateral by the plaintiff bank which surrendered the receipt and received in its stead and as a substitute therefor said accounts, but there was no written assignment or delivery of the books containing the accounts to the plaintiff. The tube company agreed as plaintiff's agent to collect the accounts for plaintiff and to pay over the proceeds which were to be applied to the liquidation of its liabilities to the plaintiff which were due or to become due.

On May 5, 1903, the tube company drew on the Spokane Falls Gas Light Company for $6,544.42 to the order of the defendant bank, which included the amount due on the four accounts, and as agent for the plaintiff bank deposited the draft on the same day in the defendant bank for collection. The draft was collected by the latter bank and the proceeds passed on May 20, 1903, to the credit of the tube company which at that time had a general account with and was a depositor of the defendant bank.

On May 15, 1903, the tube company assigned in writing to the plaintiff bank a number of accounts aggregating more than $30,000, among them being the four accounts against the Spokane Falls Company, aggregating $4,687.49 and already regarded as being in the hands of the plaintiff as collateral security for payment of the note of January 19, which would become due May 19, 1903. The tube company agreed in the assignment to collect and deliver to the plaintiff without cost all payments received by that company, the same to be ap-

plied to the liquidation of its indebtedness to the bank due or
to become due or that may have been theretofore or might be
thereafter contracted.

On May 21, 1903, a receiver was appointed for the Eastern
Tube Company, and on May 22, the defendant bank had in its
hands a balance of $21,907.95 of the tube company's money,
which included the draft deposited by the tube company for
collection. On the latter date the indebtedness of the tube
company to the defendant bank was about $100,000 and the
bank, then in the hands of a receiver, applied to the indebted-
ness the entire deposit balance of the tube company which
was not more than twenty-five per cent of the indebtedness.
At no time prior to the application of the proceeds of the draft
to the tube company's indebtedness, had the defendant any
notice or knowledge of the claim by the plaintiff against the
proceeds of the draft. This suit was the first claim made by
plaintiff against the defendant bank for any part of the pro-
ceeds of the draft.

There was no evidence that the defendant was misled or in-
jured by the conduct of the plaintiff, nor did it appear that the
defendant bank made any advances on the credit of the draft.
The learned court below, in its conclusions of law, held that
"in depositing the draft and collecting the account the agency
of the tube company was nothing more than that it acted for
the bank, the pledgee of the account with authority;" and
that "the plaintiff by leaving the account in the hands of the
tube company and authorizing it to collect it, but failing to
take into its hands the evidence of indebtedness and to notify
the Spokane company, is not entitled to judgment." Judg-
ment was accordingly entered for the defendant from which
the plaintiff has taken this appeal.

The plaintiff contends that the defendant is not a bona fide
purchaser for value and was not misled or put to any loss by
reason of any act of either the plaintiff or the tube company.
The plaintiff bank also claims that it was a pledgee for value
of the Spokane accounts before the draft was deposited for
collection and hence is entitled to the fund in controversy.

The position of the defendant bank is that it accepted the

draft in payment of an antecedent debt without notice of the plaintiff's claim and that therefore the title passed to it as against the plaintiff; that at the time the draft was deposited the tube company had title to the accounts with the right to collect them and that having collected them and deposited the money in the defendant bank, it had the right to retain the money under the parol agreement of December, 1901.

The plaintiff cannot recover in this action on the assignment of the book accounts made to it by the tube company on May 15, 1903. The money due on those accounts was collected by the tube company by means of the draft drawn by it in favor of the defendant bank which, when the money was collected, credited the amount to the account of the tube company and applied the sum to the indebtedness of the tube company to the bank. The plaintiff bank gave no notice to the Spokane company of the assignment to it of the tube company's accounts, and the defendant bank had no notice of the assignment when it collected the money and applied it to the indebtedness due it from the tube company. Under these circumstances, the title to the fund passed to the defendant bank: Phillips's Estate (No. 3), 205 Pa. 515.

If the plaintiff bank is entitled to the fund in controversy, it must be by virtue of the pledge of the Spokane accounts to it as collateral security for payment of the note of January 19, 1903, given by the tube company to the plaintiff. In order to make a valid pledge as against other creditors there must be an actual or constructive delivery of the possession of the goods. The delivery must be clear, unequivocal, complete, and effective at all times so as to give notice to third parties of the pledgee's rights; a mere agreement by the debtor that the creditor shall take and hold certain property as security for his debt is insufficient: 31 Cyclopedia of Law & Procedure, 801. Delivery of possession is sufficient if made by the transfer of the instrument which represents the property, such as a warehouse receipt, elevator receipt, bill of lading, promissory note or an obligation or claim upon other persons. The delivery of a bank book is sufficient to constitute a pledge of the book and money on deposit: Boynton v. Payrow, 67 Me. 587. In

Brewster v. Hartley, 37 Cal. 15; 99 Am. Dec. 237, RHODES, J., delivering the opinion says (p. 241): "Incorporeal property, being incapable of manual delivery, cannot be pledged without a written transfer of the title. Debts, negotiable instruments, stocks in incorporated companies, and choses in action generally, are pledged in that mode. Such transfer of the title performs the same office that delivery of possession does in case of a pledge of corporeal property. The transfer of the title, like the delivery of possession, constitutes the evidence of the pledgee's right of property in the thing pledged. In 22 Am. & Eng. Ency. of Law (2d ed.), 854, it is said: "As between successive pledgees without any communication with each other, that one who lawfully obtains possession at the time of the pledge, or subsequently, is entitled to be preferred. Where a contract or pledge is made, but there is no actual or constructive delivery of the goods to the pledgee, he obtains no lien although he actually advances money on the faith of the contract of the pledge and although he acts with the utmost good faith." A book account is not pledged by the delivery of a copy of the account as security without an assignment, since such a copy does not represent the debt: Cornwell v. Baldwin's Bank, 43 N. Y. Supp. 771.

Recurring to the facts of the present case, it will be seen that the plaintiff cannot sustain its claim to the fund in dispute on the ground that it was a pledgee of the Spokane accounts. The pledge was never completed by any actual or constructive delivery of the property pledged. This property consisted of four accounts or bills receivable which the tube company held against the Spokane Falls Gas Light Company. The accounts themselves, or rather the books containing the accounts, were never delivered to the plaintiff notwithstanding the note of January 19, 1903, stated that they had been deposited with the bank. It is conceded that no such delivery was made. There was a delivery of copies of the account to the plaintiff bank without any assignment or other transfer of the right of the tube company in or to the accounts. This manifestly was not an actual or constructive delivery of the accounts to the pledgee. The same delivery could have been made to as many

parties as the tube company had creditors, and with like force and effect. It gave no notice to other parties purchasing or accepting the accounts as collateral security, nor did it confer authority on the plaintiff bank to enforce payment against the Spokane company by an action at law. The delivery of the copy, therefore, transferred neither the title nor the possession of the accounts to the plaintiff bank, and hence was insufficient to create a lien on the accounts in favor of the bank as against subsequent purchasers, pledgees, or creditors of the tube company without notice.

The plaintiff bank not having completed its pledge by securing a delivery of the Spokane accounts is not in a position to invoke the rule against the defendant, relied on by the appellant and enunciated in First National Bank v. Gregg & Co., 79 Pa. 384, and kindred cases, that as against the plaintiff the defendant could not claim the fund in dispute because it had made no advances or had given no new credits to the tube company on the faith of the accounts. In other words, before the plaintiff bank can insist upon the enforcement of that rule, it must show that it had a valid pledge of the Spokane accounts at the time the draft or its proceeds were deposited in the defendant bank.

The assignments of error are overruled and the judgment is affirmed.