### In re HAWLEY DOWN DRAFT FURNACE CO.

(District Court, E. D. Pennsylvania. March 7, 1916.)

#### No. 4521.

BANKRUPTCY ⬿184(1)—TRANSFERS OF CHOSES IN ACTION—VALIDITY AS AGAINST TRUSTEE.

    Under Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 (Comp. St. 1913, § 9651), providing that conveyances, assignments, etc., made by a bankrupt within four months prior to the filing of the petition, with intent to hinder or defraud creditors, shall be null and void as against creditors, except as to purchasers in good faith and for a present consideration, and that conveyances or transfers made by a debtor within four months prior to the filing of the petition and while insolvent, which are null and void as against creditors by the laws of the state, shall be deemed null and void against creditors if the debtor be adjudged a bankrupt, and that the property shall be reclaimed and recovered for the benefit of creditors, and under the decisions in Pennsylvania, an assignee of the choses in action of an insolvent assignor, who did not take possession of the property assigned by giving notice of his title to the debtors, but who permitted them to be paid by the debtors and received by the assignor's trustee in bankruptcy, had no equitable claim to moneys in the hands of the trustee, though some of the assignments were made more than four months prior to bankruptcy, as its sole right was the right to sue the debtors of the bankrupt, and, having lost that right, equity would not provide a substitute at the expense of creditors.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 275; Dec. Dig. ⬿184(1).]

In Bankruptcy. In the matter of the Hawley Down Draft Furnace Company. On petition for review of an order of the referee allowing the claim of the National Trust & Credit Company. Order vacated and reversed, and claim dismissed.

See, also, 214 Fed. 500.

John W. Creekmur, of Chicago, Ill., and Kirkpatrick & Maxwell, of Easton, Pa., for petitioner.

E. J. & J. W. Fox, of Easton, Pa., for trustee.

DICKINSON, District Judge. The controversy between the parties concerned is the second time before the court. A broad outline

statement of the facts will suffice to bring out the questions involved. The claimant is engaged in the business of aiding manufacturing and other concerns to finance themselves by buying their accounts current. This is effected by entering into an agreement setting forth the particulars of what is proposed to be done and on what terms. The agreement involved an assignment in writing of purchased accounts, and provided that such assignments should be given. It involved also the guaranty of the assignor of the genuineness of the accounts and of the correctness of the amounts set forth as due. It provided for, the collection by the assignor and the transmission of the amounts paid, in the form in which paid. It provided further for the payment of the consideration, which was fixed, at the amount of the account less certain, discounts, graded according to the length of time the accounts had to run, of which consideration 20 per cent. was deferred in payment until the account was actually collected. Following the agreement thus made, a large number of accounts, aggregating in amount a considerable sum of money, were from time to time purchased and paid for in pursuance of the agreement.

As might be expected, the assignor did not live up, in all respects, to its agreement. It did not (at least always) remit the collections as made, but treated the transactions as loans or advancements, and made payments accordingly. The phraseology employed in the statements rendered was to "retire" the named accounts thus closed. No notice was given of the assignments to the parties who owed the accounts. They were left in entire ignorance of any change of ownership in the accounts they owed, and settled them with the assignor as still the owner. The transaction amounted to nothing more than giving to the claimant the naked equitable title on paper to the accounts. It was therefore to all intents and purposes an arrangement between the assignor and assignee that as between themselves the claimant owned the accounts, but as to all the rest of the world the assignor remained the owner. This was, of course, coupled with the power thus given the assignee to complete and make effective its title by giving notice to the debtor. This, however, was never done. Were the accounts of the transactions between the assignor and assignee made the subject of a settlement statement between them based upon the terms of the agreement, there would be found owing the latter a balance exceeding the moneys involved in this dispute. These latter represent the proceeds of the collection of certain accounts. We understand it to be agreed that the aggregate sum is $4,138.79, and that the agreed proportion of this sum, which is made up of accounts assigned before May 5, 1912, is $1,775. We therefore have not attempted to verify the correctness of this apportionment. The significance of this date lies in the fact that the petition in bankruptcy was filed September 5, 1912. The moneys in controversy are included in the sum of collections of accounts made by the bankrupt on July 31 and during August, 1912. The assignor company went into the hands of a receiver appointed by the state court. Just when the appointment was made, or the nature of the proceedings in which it was made, we are not informed, except that the referee incidentally finds it was before Au-

gust 14, 1912. The assignor turned over to the receiver the funds in its hands (including some part of the collected accounts) and the receiver in turn paid the moneys over to the trustee in bankruptcy less certain disbursements made by him. The balance was the sum of $4,138.79 above mentioned. The referee found against the title of the claimant basing his order on the ground that there had been no valid assignment of the accounts and the authority of American Bank v. Federal Bank, 226 Pa. 483, 75 Atl. 683, 27 L. R. A. (N. S.) 666, 134 Am. St. Rep. 1071, 18 Ann. Cas. 444. No facts were returned, other than the making of the agreement.

At the argument upon the review, it was stated, without contradiction, that the ruling was that, although the assignments had been offered and treated as in evidence and were not in dispute, they must be regarded as nonexistent because there had been no formal proof of execution. Complaint was further made that the record was without any findings of the facts upon which the claim was based. The cause was referred back to the referee for such findings. He has now returned very full and satisfactory findings upon all phases of the case. These include the fact that assignments of particular book accounts were made in good faith, without notice, or any reasonable cause to believe that the assignor was insolvent, or that the transaction would be to the detriment of creditors, and that the agreement between the parties contemplated a bona fide purchase and sale of the accounts free from any taint of its being in reality an usurious loan transaction in attempted disguise. The inquiry which the referee has thus made has led him to the conclusion that the claimant had a valid title to the accounts, and has accordingly awarded to it the fund of $4,138.79. This order is made upon the authority of Phillips' Estate (4) 205 Pa. 525, 55 Atl. 216, 97 Am. St. Rep. 750, and the line of cases which rule that an assignment of choses in action is good against attaching creditors without notice thereof to debtors.

The findings of the referee have left little in the case beyond the question (purely one of law) which is next discussed. However plausible and forceful the argument in favor of the inference that the relation between the claimant and the bankrupt, established by the dealings of the parties, was one of creditor and debtor, and not of vendee and vendor, the referee has found the latter relation to have existed. We accept this finding. We accept also his further finding that at the time the assignments were made, the claimant did not know, nor had it reasonable cause to believe, that the assignor was then insolvent, or in contemplation of insolvency, or that the transactions had would be detrimental in any way to its creditors, or work out any situation in the nature of an unlawful preference. This is the extent to which we understand his findings to go. To find that this bankrupt was in fact at the time solvent, or even the negative finding that it was not insolvent, is flatly inconsistent with the admitted situation and the admissions made at the argument. The fact is, and is so found, that it was then insolvent. We require only the additional fact that the assignments made were secret, and that not only was no notice given at the time, but no notice was ever given, and no claim of ownership

was made until after the debtors had made payment of the accounts and the moneys had passed into the keeping of the receiver. We are therefore brought to face the plain proposition which will be later stated. It is preceded by this question: Is a secret, but otherwise unimpeached, written assignment of choses in action, made when the assignor is insolvent, good as against a trustee in bankruptcy, where there has been no delivery of the property assigned other than that of the written assignment itself? We have, of course, the subsidiary question of whether a trustee may avoid a transfer (otherwise voidable) unless made within the four months' period.

The main question is one of prime importance to the commercial world. It is surprising, as well as regrettable, that the law of the subject should be as open to difference of opinion as the adjudged cases permit. It would be well if it were authoritatively settled one way or the other. The real basis of the discussions, which the question has provoked, is the conflict between the rugged principles of the common law and the doctrine of secret liens and titles which finds favor in the subtle genius of the civil law. We have stated the question broadly, because we do not see that any real gain is effected by the device of constituting the assignor the undisclosed agent of the assignee for the collection of the accounts. The real transaction is an effectual or attempted means by which the vendor may transfer his property, and yet remain in possession of and in full dominion over it; in other words, both transfer and not transfer it by one and the same act. This is clearly inconsistent with the very spirit of the common law and destructive of its well-established policy. Its requirements are that sale transactions shall be straightforward and aboveboard. The right of alienation is freely given, but a sale must be a real sale, and not a sham or pretense. A real sale of chattels is accompanied with delivery, resulting in a change of possession. When we pass from tangible to other forms of property, a like change in the form of delivery is forced. It is necessarily limited to that of which the subject-matter is in its nature capable.

The first inroad upon the common-law doctrine was inspired by obvious equities when the question arose between the vendor and his vendee. The next was taken from the standpoint of an attaching creditor, whose position is frequently described as of one standing in the shoes of his debtor. Here, it may be stated in passing, an obvious distinction is frequently overlooked. The plaintiff in attachment in execution proceedings is none the less, not only a creditor, but an execution creditor, of the defendant. As against the garnishee, he, of course, has no rights which the defendant does not have, because he succeeds through the attachment only to such claims against the garnishee as the defendant himself had. In other words, the issuing of the attachment does not in any degree increase the liability of the garnishee to his creditor. The plaintiff in the attachment, however, does not lose his status as a creditor, and as such he surely does not stand in the shoes of his debtor. Another supposed departure from the doctrine is presented by the case of successive assignees of the same chose in action, neither of whom has completed the transfer to

him by notice to the debtor of the assignor. Here the doctrine of first in time, strongest in right, is applied. The reasons for so holding are likewise obvious. It is clear that none of these steps (except the attachment cases) involve any recession from the position of one standing on the original principle.

What, then, is its application to the instant transaction? What the claimant had was an equitable title on paper to these accounts. There was no delivery of what is assumed to have been sold, either in substance or form. No notice was ever given to the debtors, who paid in ignorance of any change of ownership. The accounts had been converted into cash before the present claim was asserted. This and other suggested features of the claim will be later considered. What concerns us now is the naked question of the legal necessity of delivery, as evidenced by notice to the debtor that the debt had been assigned. The law of Pennsylvania is now settled in accord with the English doctrine that, as between successive assignees, he who first gives this notice takes under his assignment. Phillips' Estate (3) 205 Pa. 515, 55 Atl. 213, 66 L. R. A. 760, 97 Am. St. Rep. 746. The same doctrine is accepted by the courts of the United States. Bayley v. Greenleaf, 20 U. S. (7 Wheat.) 46, 5 L. Ed. 393.

On principle, therefore, we would seem to be led to the conclusions that the assignment of a chose in action is subject to the same rules which pertain to other transfers of personal chattels, and that all sales, to be effective against the world, must be accompanied with delivery or its equivalent. A sale otherwise made is good as against the vendor, but is not good as against bona fide purchasers or execution creditors. The results, when the clash is (as it is here) between such assignees and those who are subsequent assignees by operation of law, we will consider later, deferring its consideration in order to introduce another feature of the present case. This feature is that presented by the further situation already suggested. The title of the claimant is an equitable title. Had it completed its assignment by notice to the parties owing the accounts, this would still have been its status. If it had enforced its demand for payment by suit against the debtors, the suit must have been in the name of its assignor to its use. The title of the trustee is the legal title. This has crystallized into the actual possession of the proceeds of the collection of the accounts. The right of demand of the claimant was against those who owed the accounts. This right it has lost, because clearly a payment to the holder of the legal title to the account protects the debtor against any claim of title of which no notice was given.

The appeal of the claimant must, in consequence, be made to the court as a chancellor to charge the moneys in the hands of the trustee with an equitable lien in its favor to the sum of the claims which it asserts it might itself have collected. This presents the extent of claim of equity which is put forward on its behalf. It pushes its claim of right to a point beyond any line which has yet been drawn in favor of any such assignees. The rights of trustees in bankruptcy are defined in section 67c of the act. This bankrupt was undoubtedly insolvent when these transfers were made. Had the property trans-

ferred been corporeal, and left with the assignor, the sale would un-
questionably have been void against creditors. This consequence
would have followed, not because the transfer was fraudulent in fact,
but because it was void in law. There was a like retention of posses-
sion by the bankrupt here, and a like result would be expected to,
follow.

We would entertain no doubt of the result, except for those cases
which, under the rulings of the courts of Pennsylvania, have upheld as-
signments as against attachments in execution and foreign attach-
ments. So far as they have been called to our attention, in none of
them was the right of the creditor as an execution creditor directly
presented to the consideration of the court. As against a second as-
signee, even though a mere creditor assignee, the first assignee takes
nothing. Whether an assignee who is such by operation of law is with-
in the protection of the same principle is seemingly still an open ques-
tion. It is not necessary to plant the ruling in the instant case upon
this ground and because of this we do not further discuss it. As far
as we need go is that an assignee of the choses in action of an insolvent
assignor, who does not take possession of the property assigned by
giving notice of his title, but permits the accounts to be paid by the
debtors and received by a trustee in bankruptcy of his assignor, is with-
out any equitable claim to any moneys which may be in the hands of
the trustee, based upon the mere fact that he held a written assignment
of the accounts thus collected.

This conclusion finds support in the expressed opinion of Judge
Gibson in Fisher v. Knox, 13 Pa. 622, 53 Am. Dec. 503, and in the
ruling in Bank v. Penn Motor Co., 235 Pa. 194, 83 Atl. 622. Indeed,
this latter case may be said to rule in part the present, notwithstanding
that it has not been accepted as ruling the flat proposition for which
the language of the opinion might seem to stand. The referee has
gone into the question with painstaking care, and, it must be admitted,
has followed the commonly accepted doctrine of the attachment cases
to its logical results. That doctrine, however, is really not as broad
as commonly accepted to be. It is merely that even mere paper assign-
ments are good as against the assignor and all who are asserting only
his rights. It leaves untouched the other doctrine that transfers un-
accompanied with delivery, or its equivalent, are void as against sub-
sequent bona fide purchasers and creditors. The rights of creditors
may be asserted through a levy under an execution. If the transfer
is of corporeal chattels by a paper writing without change of posses-
sion, the vendee admittedly cannot successfully assert his title against
the execution. It is true that choses in action can only be reached
through attachment process, and it is not a little difficult to understand
why attaching creditors are not creditors and execution creditors as
well.

We are nevertheless confronted with these rulings, and we appreciate
the view of the referee that he felt compelled to give them their
logical application. This distinction has been suggested: What we
have termed the common-law policy has in fact no basis in the com-
mon law, but springs wholly from the statute of Elizabeth, and the

statute applies only to lands and corporeal chattels and the other kinds of property enumerated. On the other hand, the law of assignments of choses in action we have borrowed from the civil law, and in consequence must there apply its principles. We get, however, small help from this thought, because the principle referred to, no matter what its source, is part of the common law of Pennsylvania, and has been recognized as requiring delivery or its equivalent to accompany a transfer of choses in action.

The present ruling, as before suggested, may be rested on the narrower grounds that a trustee in bankruptcy may avoid any transfer which, under the law, is voidable by an execution creditor and a paper transfer of title with possession left in the vendor is void against an execution creditor. This, of course, would not apply to the $1,775 part of the claim. All, however, which the claimant acquired by his paper, was the right to demand and receive payment of these accounts from the debtors. When he permitted them to pay without notice of his title, his right to collect was gone. He cannot, without the aid of a chancellor, transfer his claim to the money, and the chancellor must refuse his aid to one whose title is not favored by the policy of the law. In other words, the sole right of the claimant was to sue the debtors of the bankrupt. If it has lost that right through its own act, equity will not provide a substitute which it can only supply at the expense of creditors. The reason is the legal title to these moneys is in the trustee. The claimant can confront this at the most with an equitable title to accounts, which was good only against the bankrupt, and even this it has lost. It would require a stronger equity than the claimant has shown to create for it another title.

The elaborate argument submitted on behalf of the claimant calls for an allusion to two points raised. Whether this was a Pennsylvania or an Illinois contract is of no consequence, in the light of the absence of any shown difference in the law of the two jurisdictions. So far as we have any light on the subject, the law of Illinois is against the claimant. Green v. Van Buskirk, 72 U. S. (5 Wall.) 317, 18 L. Ed. 599.

The numerous cases holding the title of the trustee in bankruptcy to be only that of the bankrupt apply (since the amendment to the Bankruptcy Act) only to those accounts which were assigned before May 5, 1912. Had the claimant perfected its title by notice at any time before the accounts were paid, and had the chose in action passed to the trustee, the title of the claimant to these accounts could have been successfully asserted through reclamation proceedings. It now has no title to assert, except through the interposition of a chancellor, and it has no such equity as will move a chancellor to intervene.

The order of the referee is vacated and reversed, and the claim of the National Trust & Credit Company is dismissed.