**MINERS' BANK OF WILKES–BARRE v. ACKER et al.**
Nos. 4837, 4906.

Circuit Court of Appeals, Third Circuit.
July 19, 1933.

H. C. Reynolds, Cole B. Price, John H. Price, and H. R. Van Deusen, all of Scranton, Pa., for appellant.

Wm. J. Fitzgerald (of Kelly, Balentine, Fitzgerald & Kelly), of Scranton, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

These are appeals from an order of the District Court affirming in part and overruling in part the recommendations of the special master.

This case arose out of the receivership of the Scranton, Montrose & Binghamton Railroad Company, hereinafter called the Montrose Company. Its line of railway ran from Factoryville, in Wyoming county, to Montrose, in Susquehanna county, Pa. The Montrose Company also operated, under lease made in 1910 to its subsidiary, the Scranton & Binghamton Traction Company, hereinafter called the traction company, the Northern Electric Street Railway Company, hereinafter called the Northern Company. It also operated the Dalton Street Railway Company, hereinafter called the Dalton Company, whose lines ran from Scranton to Factoryville, with a branch line to Lake Winola. This company was a subsidiary of the Northern Company.

The appellant is trustee under the first and prior lien mortgage made by the Montrose Company in 1919 to secure outstanding bonds to the amount of $1,800,000. The mortgage covered the company's line of railway in the counties of Wyoming and Susquehanna together with all its equipment, fixtures, rolling stock, etc. The appellant is also successor trustee under the first and prior lien mortgage of the Northern Company

which covered its line of railway and the leasehold of the Dalton Company, with its rolling stock, tools, and equipment.

E. C. Randolph filed a bill in equity against the Montrose Company on behalf of himself and all other creditors who might join in the suit, and prayed for the appointment of a receiver with authority to operate and manage the railroad and conduct its business. The appellees were appointed receivers and operated the Montrose Company and the subsidiaries as above stated.

The operation of the Montrose Company resulted in a loss, and so, on a petition filed by the receivers on August 31, 1931, the court granted a rule to show cause why the personal property and choses in action should not be sold free and clear of all liens and incumbrances. On the return day, the appellant filed objection to the sale on the ground that much of the property proposed to be sold belonged, not to the Montrose Company, but to the Northern Company and the Dalton Company. A rule to show cause was granted on this objection returnable October 23, 1931.

On October 20, 1931, the court ordered the receivers to return to the Northern Company, the railway, equipment and fixtures which had been leased to the traction company.

On the same day the appellant filed a petition for leave to foreclose the mortgage of the Northern Company, in which petition was set out specifically the property which the mortgage covered. The court allowed the petition and ordered the foreclosure, but on October 24, 1931, on further consideration, it filed an opinion (—— F. Supp. ——) dismissing the petition to foreclose and made absolute the petition of the receivers filed August 31, 1931, for the sale of its personal property and choses in action free and clear of all incumbrances as of October 20, 1931.

On October 26, 1931, appellant filed a petition to foreclose the mortgage of the Montrose Company, but this petition was dismissed November 3, 1931.

On October 27, 1931, the return of the sale of the property of the Montrose Company was filed setting forth that Ira C. Fine, one of the receivers, was the highest bidder for the property, with two parcels excepted, in the sum of $25,000. On the same day the sale was confirmed to Abram Salsburg on Fine's designation.

On November 3, 1931, on petition of the appellant, the court granted a rule to show cause why the sale should not be set aside. Answer was filed the following day. The matter was referred to a special master who heard the evidence and reported to the court on January 18, 1932, that all the property was subject to the mortgage of the Montrose Company, except that embraced in schedule "I," which belonged to the Dalton Company or to the Northern Company under and in accordance with the terms of the lease of the Northern Company to the traction company, which lease was assumed by the Montrose Company when it reorganized and took over the traction company, and with the exception also of the stock of the Lake Winola Park Company and the stock of the Lake Winola Association. The special master further reported that the property should be sold free and clear of the lien of the mortgage, and that the lien thereof should be transferred to the fund, and that in all other respects the sale should be approved.

Exceptions to this report were filed by Abram Salsburg, by the appellant, and by the receivers. On March 18, 1932 (—— F. Supp. ——), the court filed its opinion and orders sustaining the exceptions of Abram Salsburg, and of the receivers as to the stock of the Lake Winola Park Company, and Lake Winola Association, but disregarded the master's recommendation that the lien be transferred to the fund, discharged the several rules granted, except as to property included in schedule "I," and ordered the appellant to pay the master's expenses within thirty days.

Two appeals were taken from these three orders. The first was from the order of October 24, 1931, dismissing the petition of the appellant and rule to show cause for the foreclosure of the mortgage of the Northern Company and making absolute the rule of August 31, 1931, for the sale of the personal property and choses in action of the Montrose Company and from the order confirming the sale of the Montrose Company. The second was from the order which sustained the exceptions of Salsburg and the receivers to the master's report (holding that the stock of the Lake Winola Association and Winola Park Company was covered by the mortgage and belonged to the trustee) and directed the appellant to pay the master's expenses within thirty days.

Out of these appeals both parties say three main questions arise, but they differ as to what they are.

■ 1. Had the District Court, sitting in equity, under the circumstances of this case, power to order the receivers to sell the assets of the Montrose Company consisting of rails, bridges, trolley wires, cars, tools, etc., as per-

sonal property, free and discharged of the first and prior lien mortgage?

Both parties agree that this is substantially the first question. These rails, bridges, and wires under the decisions of the Pennsylvania courts are real estate, though described in the advertisement and rule to show cause as personal property. Titus v. Poland Coal Company, 275 Pa. 431, 436, 119 A. 540. This false designation, however, is not fatal to the sale if it was otherwise valid. We do not find any decisions in Pennsylvania which hold that a mortgage lien may not be divested by a judicial sale of real estate. The appellant relies principally upon the Act Pa. of March 23, 1867, P. L. 43, § 3 (see 21 PS § 651 note), which provides that: "When the lien of a mortgage upon real estate is, or shall be prior to all other liens upon the same property, except other mortgages, ground rents, purchase money due to the Commonwealth, taxes, charges, assessments and municipal claims, whose lien though afterwards accruing has by law priority given it, the lien of such mortgage shall not be destroyed, or in any way affected by any order, or decree of any Orphans or other court, or any writ of execution, or otherwise howsoever: Provided, that this section shall not apply to cases of mortgages upon unseated lands, or sales of same for taxes."

This section has no application to the sale of real estate generally divested of the lien of the mortgage thereon. The antecedents of the word "lien" in the words, "whose lien, though afterwards accruing," etc., are "taxes, charges, assessments, and municipal claims." These words in many of the Pennsylvania statutes are used together, and in connection with the word "lien." Act April 16, 1845, P. L. 488; Act of January 23, 1849, P. L. 686; Act of April 5, 1844, P. L. 199. The purpose of this act of 1867 was to introduce into the general law of the Commonwealth of Pennsylvania another class of liens against which the lien of mortgages is protected. Fisher v. Connard, 100 Pa. 63, 68, 69. The liens of taxes, charges, assessments, and municipal claims, though accruing after mortgages, destroyed by law the lien of prior mortgages. The effect of this section of the statute was to prevent this. It therefore has no reference to the facts of the case at bar.

A court of equity under proper circumstances has power to order a receiver to sell property free and clear of all incumbrances, and to deny the mortgagee the right to foreclose his mortgage. Stokes v. Williams (C. C. A.) 226 F. 148; In re Dyer (D. C.) 8 F.(2d) 376; Broadway Trust Company v. Dill (C. C. A.) 17 F.(2d) 486; Seaboard National Bank v. Rogers Milk Products Company (C. C. A.) 21 F.(2d) 414; Mellen v. Moline Malleable Iron Works, 131 U. S. 352, 9 S. Ct. 781, 33 L. Ed. 178; Van Huffel v. Harkelrode, etc., 284 U. S. 225, 52 S. Ct. 115, 76 L. Ed. 256. As above stated, the law of Pennsylvania is not contrary to the law generally.

Another point raised against the validity of the sale is that the property was sold at the federal building in Scranton, and not at the court house in Wyoming or Susquehanna counties, where most of the property was located, as required by 28 USCA §§ 847 and 848, for both real estate and personal property. This sale should not have been there made and could have been prevented if objection on that ground had been seasonably made, but it was not, and, since the sale has been made, the pertinent question is whether or not actual damage has been suffered because the sale was made at an improper place. We do not think it has, or that the rights of any one were prejudiced thereby.

The appellant complains (and this may in part explain its inactivity) that it was not served with due and timely notice of the receivership. In the rule to show cause, made on August 31, 1931, why this property and choses in action should not be sold free and clear of all liens and incumbrances, the court ordered notice to be given to the appellant. "This," it says, "was the first due and legal notice given the appellant of such receivership or of any intention to charge the property covered by the lien of its mortgage," and that it appeared on the adjourned return day of the rule, October 20, 1931, filed its objection to the sale, and asked that the rule be discharged, but the objections were overruled, and the rule for sale was made absolute.

While this might have been the first due and legal notice which was served upon the appellant, yet, as a fact, it knew of the appointment of the receivers at or about the time they were appointed on October 31, 1930. Its trust officer sat in conference with them, did not object to the receivership, nor the operation of the road by the receivers, from that date until October 20, 1931. So while it might not have had the legal notice to which it was entitled, it had actual notice and apparently acquiesced in the receivership for a year. It did not object to the receivership when it could and should have done so, if it intended to stand on its technical rights, and now it is rather late to object. Frank v.

Butler County, Neb. (C. C. A.) 139 F. 119; Speidel v. Henrici, 120 U. S. 377, 378, 7 S. Ct. 610, 30 L. Ed. 718.

■ 2. The second question, the appellee says, is whether or not shares of stock owned by a railroad can be mortgaged without the delivery of the certificates of stock to the trustee. The trial court held that it could not be done.

The stock referred to in the question, as stated by the appellee, was 540 shares of stock of the Lake Winola Association and 20 shares of stock of the Lake Winola Company. The mortgage of the Montrose Company purported to convey to the trustee all its right, title, and interest in and to these shares of stock, together with other property, personal and real. But these certificates of stock were never delivered to the trustee, and it never attempted to secure possession of them from the date of the mortgage, October 1, 1919, until after they were sold, October 20, 1931, and the sale was confirmed, and the purchaser had sold them again. If the trustee had any right, title, or interest in or to these certificates, it lost it in failing to secure possession of them.

■ The trustee, however, contends that the Act of Pennsylvania of June 12, 1878, P. L. 183 (67 PS § 523), renders it unnecessary for it to acquire possession of the certificates in order to maintain its title to them. The act provides that: "The provisions of the act to which this is a supplement shall apply to mortgages created or to be created upon the locomotive engines and cars of railroad corporations, and other personal property held by them for the purpose of operating the railroad belonging to them; and it shall be lawful for the mortgagors to retain the use and possession of said mortgaged property, without impairing the lien of the said mortgage: Provided, That such mortgage shall not be valid against persons not parties thereto, unless recorded as is now required by law in the case of mortgages of real estate, in every county in which the mortgaged property is situated: And provided further, That all cars and engines mortgaged under the provisions of this act, shall be marked in some conspicuous place with the name of the trustee in said mortgage." This act refers to such personal property as locomotive engines, cars, and rolling stock generally on which the name of the trustee under the mortgage may be conspicuously marked, and not to stocks and bonds.

■■ Certificates of stock can be pledged, but, in order to constitute a valid pledge,

there must be a delivery of the property to the pledgee or pledgeholder agreed upon as agent or representative of the pledgee. Possession must be continuous, with exceptions not here material, during the continuance of the pledge. Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779. Conversely, a pledge of stock by an instrument, in Pennsylvania where chattel mortgages as such do not exist, is not good against third parties or judgment creditors of the pledgor. Westinghouse v. National Bank, 196 Pa. 249, 254, 46 A. 380, American Exchange National Bank v. Federal National Bank, 226 Pa. 483, 75 A. 683, 27 L. R. A. (N. S.) 666, 134 Am. St. Rep. 1071, 18 Ann. Cas. 444; Thompson v. Hazelwood Savings, etc., Co., 234 Pa. 452, 83 A. 284; 21 R. C. L. 642, § 10; Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779. Consequently the trustee has no valid claim to the stock as against third parties or judgment creditors.

■ The appellant says the second question is whether or not the sale should be confirmed to a receiver as the highest bidder at his own sale including securities and chattels real, which were covered by the mortgage without specific notice or advertisement.

On principle, a receiver should not purchase at his own sale. Such practice would open the door to fraud. Even where there is no actual fraud, it gives room for suspicion, and so the policy of the law forbids it.

The sale in question was had in the federal courthouse on October 20, 1931, after several continuances, and $22,500 was the best bid that could be obtained. Ira C. Fine, one of the receivers, was unwilling to sell the property for that price, and so he bid $25,000. Certain bidders objected to his bidding, but all the parties then went into open court, and all objection to his bid was withdrawn, for it was the highest bid that could be secured, and counsel frankly admitted at the argument that they had no other bid of any kind and no prospect of selling the property to others.

The master expressly found that there was no fraud in the conduct of the sale, and everything was done openly and above board. The question is whether or not the confirmation of the sale should be set aside under the circumstances of this case when there is no prospect of another sale at as large a price as was paid by the receiver.

The evidence shows that the property was being stolen right along, and that it continually depreciated. While we think that the policy of the law, which forbids the purchase of property by a receiver at his own sale, is

wise, and do not wish to be understood as relaxing that policy, yet there are times and circumstances when an appellate court is loath to set aside the confirmation of such sale, especially when there is no fraud or suspicion accompanying the sale and it is practically certain that a resale would result in loss to creditors.

Since the securities formed part of the insolvent estate, and since the appellant had actual notice of the receivership and notice of the sale, the second question of the appellant furnishes no ground for setting aside the confirmation.

3. The third question raised by the appellant is whether or not the court should confirm the sale by the receivers of equipment on the premises of a subsidiary railway, after directing the receivers to return such equipment and after leave to foreclose the mortgage covering the property had been granted.

The order of October 20, 1931, directing the receiver to return the property in question, was made on the representation to the court that the property belonged to the Northern Company. But the court doubtless changed its mind and concluded that it did not. Mr. R. L. Kohler, who had been connected with the company since 1907 and who was the only person that knew the history of the property, when it was purchased, etc., testified that it all belonged to the Montrose Company, except that contained in schedule "I," which is not here included. Accordingly the judge set aside, in part, his former order, permitted the sale of the property, and confirmed it. In so doing, he did not commit error, but did what was evidently right and proper under the circumstances. The ownership of the property was the fact upon which the order was finally based, and not the fact that the judge had ordered the property delivered to the Northern Company or granted leave to foreclose the mortgage.

During the proceedings in this receivership, errors have been committed, and, under some circumstances, these errors, as counsel ably argues, would justify a reversal, but, upon a review of the entire case, we cannot say that any error or irregularity has been so prejudicial as to justify a reversal. Delays for which all parties were in part responsible have occurred. Many rules had been granted and were outstanding at the same time. In consequence, the receivership has been rather confused and involved. To set aside the confirmation or sale would in our judgment not help any one, but would injure every one, for there does not seem to be any hope whatever of securing a better price than $25,000, for which the property was sold.

And so the decree is affirmed.